HENRY BUFFUM *vs.* TOWN OF ROCKPORT.

No. 92-P-633.

Essex. October 21, 1993. - April 26, 1994.

Present: BROWN, SMITH, & GREENBERG, JJ.

*Practice, Civil*, Default, Relief from judgment, Judicial discretion, Damages. *Judgment*, Default, Relief from judgment. *Damages*, Tort. *Statute*, Construction, Retrospective statute.

In a civil action the judge did not abuse his discretion under Mass.R.Civ.P. 55(c) in declining to set aside a default judgment entered against the defendant pursuant to the provisions of Mass.R.Civ.P. 33(a), for failure to file answers to the plaintiff's interrogatories. [381]

In a 1986 civil action in which a default judgment had entered against the defendant for failure to answer interrogatories, the judge incorrectly awarded the plaintiff damages in an amount exceeding the ad damnum and incorrectly allowed the plaintiff's motion to amend the ad damnum after damages were assessed and final judgment entered, where Mass.R.Civ.P. 54(c) expressly limits damages on a judgment after default to those demanded in the complaint. [381-384]

General Laws c. 231, § 13B, prohibiting civil parties from setting forth any monetary amount of damages in claims, cross claims, or counterclaims, except in certain circumstances, had no applicability to a complaint filed before July 1, 1987. [384-385]

CIVIL ACTION commenced in the Superior Court Department on January 16, 1986.

A motion to set aside a default judgment was heard by *Charles M. Grabau*, J. After a final judgment awarding damages was entered by *Peter F. Brady*, J., motions to vacate the final judgment and to eliminate or amend ad damnum were heard by him.

*Brian P. Cassidy*, Town Counsel, for the defendant.
*Albert E. Murdock* for the plaintiff.

GREENBERG, J. More than three years after the town of Rockport was defaulted in this tort action for failure to answer the plaintiff's interrogatories, a hearing was held in the

Superior Court to assess damages pursuant to Mass.R.Civ.P. 55(b)(2), 365 Mass. 822 (1974). The complaint, filed in 1986, alleged negligence on the town's part for failure to remove accumulated snow and ice at its water filtration plant, which caused the plaintiff's slip and fall injury, and contained an "ad damnum clause" of $50,000. The Superior Court docket indicates that in 1988 a default judgment was entered against the town. In 1991, the town's motion to set aside that action was denied by a judge of the Superior Court. In 1992, a second Superior Court judge, after a hearing and without making any findings, awarded damages in the amount of $89,650. A motion to vacate the ensuing final judgment was denied, and the second judge permitted the plaintiff, over the town's objection, to amend his ad damnum (pursuant to Mass.R.Civ.P. 15[b], 365 Mass. 761 [1974]) to conform to the evidence. From each of those adverse decisions, the town appeals.

At issue is whether the town's attempts to set aside the default were sufficient to call for relief and, if not, whether the plaintiff is bound by the monetary amount claimed in his complaint upon judgment by default under Mass.R.Civ.P. 55(b)(2). The record contains all of the pertinent pleadings and docket entries. The few facts necessary to the resolution of the appeal are undisputed.

1. *Attempts to set aside the default.* A chronology of the pleadings and other filings puts the town's lack of diligence with respect to filing answers to the plaintiff's interrogatories in focus. The complaint was filed on January 16, 1986. Interrogatories were filed by the plaintiff six days later. Service of the complaint and interrogatories was completed on January 31, 1986. Those interrogatories were not answered within forty-five days of their service. See Mass.R.Civ.P. 33(a), as amended, 368 Mass. 906 (1976). Nearly two and one-half years later, on June 22, 1988,[1] the plaintiff filed an application under the alternative procedure set out in the third para-

---

[1]The docket indicates some activity — other than the filing of answers to interrogatories — between 1986 and 1988. In February, 1986, the town filed its answer together with a motion to dismiss for failure to comply

graph of Mass.R.Civ.P. 33(a) for what the rule characterizes as a "final judgment for relief." See *Kenney* v. *Rust*, 17 Mass. App. Ct. 699, 701 (1984). There is no dispute that the town received notice of that application.

Still the answers were not forthcoming, and on August 15, 1988, the plaintiff reapplied for the entry of judgment of default against the town for failure to respond to the interrogatories. "Judgment" was entered for the plaintiff against the town on August 16, 1988.[2]

---

with the presentment requirements of G. L. c. 258, which prompted the plaintiff to file an amended complaint in March, 1986.

[2]As is suggested by the quotation marks, this "judgment" was not a true judgment. " 'A decision of the issue of liability which excludes damages is normally not a final decision which is ripe for appellate review.' *New Eng. Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 677 (1977). An interlocutory order, such as the order here determining liability on the tort counts, is not appealable as a 'judgment' even though it may be so labeled." *Krupp* v. *Gulf Oil Corp.*, 29 Mass. App. Ct. 116, 118-119 (1990). See also *Productora e Importadora de Papel, S.A. de C.V.* v. *Fleming*, 376 Mass. 826, 832 (1978); *Kenney* v. *Rust*, 17 Mass. App. Ct. at 702; *Roberson* v. *Boston*, 19 Mass. App. Ct. 595, 596 (1985). It is therefore anomalous to read rules 33(a) and 55 to call for the entry of an interlocutory "judgment" of liability such as the one entered in this case: the rules should be read to provide for entry of judgment only after damages have been determined. The final sentence of rule 55(b)(2) makes this point: "If, *in order to enable the court to enter judgment* . . ., it is necessary . . . to determine the amount of damages . . ., the court may conduct such hearings . . . as it deems necessary and proper . . . ." Neither rule 33 nor rule 55(b) requires that the plaintiff first procure an "interlocutory judgment of liability" before proceeding to a hearing to ascertain damages and a final judgment. Rather, simply, "[o]nce the default is established, [the] defendant has no further standing to contest the factual allegations of [the] plaintiff's claim for relief," and "[o]nce the court determines that a judgment by default should be entered, it will determine the amount and character of the recovery that should be awarded." 10 Wright, Miller, & Kane, Federal Practice & Procedure § 2688, at 447-448 (2d ed. 1983). See also *id.*, § 2692, at 465. Only one judgment (and only one docket entry) need be entered. In addition, judges presented with default situations should apply the correct standard in deciding whether to set aside the default under Mass.R.Civ.P. 55(c), 365 Mass. 823 (1974), which provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment has entered, may likewise set it aside in accordance with Rule 60(b)." Prior to ascertaining damages, "the more stringent standards" of rule 60(b) for setting aside a default judgment are not applicable. See *MPV* v. *Department of Rev.*, 26 Mass. App. Ct. 932, 932-933 (1988).

Three successive motions to vacate were filed. The first, filed on January 12, 1989, was never docketed in the Superior Court by the clerk of court's office and never acted upon (see note 5, *infra*); the second, filed on May 15, 1991, was denied, after hearing, on June 26, 1991. Thereafter, on February 18, 1992, a hearing to assess the amount of damages took place, and a final judgment awarding damages entered the following day. A third motion for relief from the final judgment, filed on March 17, 1992, asserted only that the amount of the judgment "is in excess of the [c]ourt's authority under Rule 54(c)" and appears not to have been directed against the finding of default.[3] (The last motion was denied on April 13, 1992.) The question whether the default should have been set aside, therefore, can be restated as whether the town's May 15, 1991, motion to vacate the default "judgment" (the action that established liability — see note 2, *supra*) was properly denied.

The May 15 motion to set aside the default was supported by two affidavits.[4] The affidavit submitted by former town counsel, who handled the case at the time of the default, asserted that "it was [his] memory that answers to the interrogatories propounded by the plaintiff to the defendant were prepared, signed by [the town's director of public works], filed with the court and forwarded to counsel of record." His affidavit did not give any date or even a rough time frame indicating when the town's answers to the interrogatories were filed. Nor did he provide the court or opposing counsel with a copy of the answers themselves. (He indicated that "a search of town records . . . has failed to locate the file" for the case.)[5] Nothing in the affidavit explains why the town did

---

[3] See Mass.R.Civ.P. 54(c), 365 Mass. 821 (1974). The issues raised with reference to that rule are discussed in part 2 of this opinion, *infra.*

[4] See Rule 9 of the Superior Court (1974).

[5] In a footnote in its brief, the town claims that, after the record for appeal was assembled in this case, successor counsel for the town discovered the town's answers to interrogatories and a Motion for Relief from Default Judgment in the clerk of court's files. The footnote also indicates that those documents were not docketed but did bear a Superior Court date stamp of January 12, 1989, and that they were not before the first judge in 1991 when he denied the town's motion to set aside the default.

not obtain another set of answers to the plaintiff's interrogatories from the director of public works, who was required to respond as the town's designated representative.[6] That failure alone justified discretionary denial of relief under either rule 55(c) (the "good cause" standard) or rule 60(b). See *Spadorcia* v. *South Shore Oral Surgery Assocs., Inc.*, 17 Mass. App. Ct. 362, 364 (1984); *Kenney* v. *Rust*, 17 Mass. App. Ct. at 703-704; *Roberson* v. *Boston*, 19 Mass. App. Ct. 595, 597 (1985). See also 10 Wright, Miller, & Kane, Federal Practice & Procedure § 2694 (2d ed. 1983). A party cannot expect that because the default sanction is cautiously imposed no adverse consequences will flow: answers to interrogatories must be filed.

Under these circumstances, and given the town's apparent knowledge at least as early as January, 1989, that a default for failure to file answers to the plaintiff's interrogatories had been entered (see note 5, *supra*), the judge did not abuse his discretion in refusing to set aside the default. See Wright, Miller, & Kane, *supra*, § 2693, at 472-474 ("An application under Rule 55(c) to set aside a default entry or judgment is addressed to the sound discretion of the [judge]. The judge's determination normally will not be disturbed on appeal unless he has abused his discretion or the appellate court concludes that he was 'clearly wrong' ").

2. *Damages recoverable.*

a. *Ad damnum and default.* The town argues that because the complaint did contain a specific dollar amount it was not subject to amendment after a default judgment was entered. We begin our analysis by noting that it is possible for a judgment in a nondefault case to exceed the amount demanded in the complaint and, generally, it is legally possible to amend an ad damnum at any time before judgment. "The allowance of such an amendment, even after verdict, rests in the judicial discretion of the court." *Laxton* v. *Hay*, 211 Mass. 463,

---

[6] The second affidavit, filed by the chairman of the town board of selectmen, indicates only that the selectmen were first informed in April, 1991, that default judgment had been entered against the town in August, 1988.

464 (1912). See also *Luddington* v. *Goodnow*, 168 Mass. 223, 225 (1897); *Kinnear* v. *General Mills, Inc.*, 308 Mass. 344, 346 (1941). These common law rules, however, are subject to limits drawn in Mass.R.Civ.P. 54(c), 365 Mass. 821 (1974). See Mass.R.Civ.P. 55(d), 365 Mass. 823 (1974) ("In all cases a judgment by default is subject to the limitations of Rule 54(c)"). "Under [rule 54(c)], a judgment by default cannot exceed in amount that prayed for in the demand for judgment. The larger judgment [is] not void in its entirety, however, but [is] susceptible of correction . . . ." *Jabaily* v. *Cullen*, 18 Mass. App. Ct. 943, 945 (1984).

Such a reading of rule 54(c) serves as an equitable policing measure to prevent a plaintiff from exceeding the stated claim and permits a defendant to make a calculated decision, based upon the allegations in a complaint, to waive liability issues and to proceed directly to the assessment of damages, if no more than the amount thus far claimed is at stake. Even after the default, it keeps the parties, while the suit goes on, in the positions they occupied when the suit began. "In fairness, therefore, damages of a particular nature may be assessed against a defendant in default only if the possibility of such an award has been brought to his attention by the complaint." *Multi Technology, Inc.* v. *Mitchell Mgmt. Sys., Inc.*, 25 Mass. App. Ct. 333, 336-337 (1988). "A defaulted defendant . . . retains a palpable reliance interest in rule 54(c)'s assurance that his liability on default will in no event exceed the amount of the plaintiff's demand. This justifiable reliance is unjustifiably ignored when a judge awards more damages than rule 54(c) had given the defendant cause to expect." *Scannell* v. *Ed. Ferreirinha & Irmao, Lda.*, 401 Mass. 155, 163 (1987). The plaintiff is in the best position to protect against an inadequate damage award as he knows the nature and extent of his damages. *Id.* at 163-164. See also Reporters' Notes to Mass.R.Civ.P. 55, Mass. Ann. Laws, Rules of Civ. P., at 442 (Law. Co-op. 1982); Wright, Miller, & Kane, *supra*, § 2663, at 142-146.

Against these well settled principles, the plaintiff poses the argument that the defendant may not rely on rule 54(c)'s

explicit requirements because the town challenged the amount of the award at a hearing to assess damages. The plaintiff urges us to adopt an approach that, if we accepted it, would create an implicit waiver of rule 54(c) if a defendant defends at a damage assessment hearing. To adopt such an interpretation would effectively swallow the rule 54(c) limitation. See *Fong* v. *United States,* 300 F.2d 400, 413 (9th Cir.), cert. denied, 370 U.S. 938 (1962), cited in Wright, Miller, & Kane, *supra,* § 2663, at 144. Contra *Peitzman* v. *Illmo,* 141 F.2d 956, 962 (8th Cir.), cert. denied, 323 U.S. 718 (1944); *Riggs, Ferris & Geer* v. *Lillibridge,* 316 F.2d 60, 62 (2d Cir. 1963); *Trans World Airlines, Inc.* v. *Hughes,* 32 F.R.D. 604, 607-608 (D.C.N.Y. 1963), affd. 332 F.2d 602 (2d Cir. 1964), cert. dismissed, 380 U.S. 248 (1965); *Sarlie* v. *E.L. Bruce Co.,* 265 F. Supp. 371 (D.C.N.Y. 1967); *Mauro* v. *Clabaugh,* 299 S.C. 184, 190 (App. 1989); 6 Moore, Taggart, & Wicker, Moore's Federal Practice par. 54.61, at 54-300 (2d ed. 1993).[7] We find the theoretical basis of the plaintiff's argument elusive, and we conclude that the plaintiff is limited to the ad

---

[7] Wright, Miller, & Kane, *supra,* § 2663, at 145, also indicates that "[t]he fact that the language of Rule 54(c) and the apparent intent of the draftsmen of the [F]ederal rules lead to the conclusion that the first sentence of the subdivision applies to all defaults does not mean that as a matter of policy it should. But if a change is indicated, it should come by amendment." The policy arguments in favor of allowing the ad damnum to be increased include the following. "[I]f [the] plaintiff desires to change his prayer for relief, [the] defendant would be notified of the circumstances and could re-evaluate whether he wished to defend actively. Furthermore, only the court — not the clerk — can render a default judgment once the defending party has appeared. Thus, if the change in the demand for relief takes a party by surprise or there is any risk that it may work an injustice, Rule 55(c) affords the court ample discretion to relieve the default, whatever its source might be, particularly since final judgment will not have been entered at that point. . . . Therefore, given the fact that [the] defendant can be protected if he is prejudiced by an amendment following his appearance and the often arbitrary nature of the way a Rule [8(a)] demand is formulated, especially when unliquidated damages are involved, a strict interpretation of Rule 54(c) operates as a potential hardship on plaintiffs. This typically would occur when counsel has not had the foresight to ask for enough damages or when the basis for the enlarged request does not become apparent until after the action is commenced." *Id.* at 145-146.

damnum of his complaint. Under the same reasoning, it was also error to allow the plaintiff's motion to amend the ad damnum after damages were assessed and final judgment was entered.

b. *Consequences of G. L. c. 231, § 13B, and its application to default situations.* In 1986, the same year the complaint in this case was filed, the Legislature enacted St. 1986, c. 708. Under § 5 of the act, the Legislature added § 13B to G. L. c. 231, so that a plaintiff was prohibited from setting forth in the complaint any "ad damnum" or monetary amount claimed against a defendant unless those damages are "liquidated" or "ascertainable by calculation." By virtue of § 9 of the 1986 act, the ban on ad damnums was to take effect on July 1, 1987, and applied to *"all complaints,* including by way of counterclaim or crossclaim, *which are filed on or after July [1, 1987]*" (emphasis added). We previously noted that the plaintiff commenced this action on January 16, 1986.

The plaintiff makes an anomalous argument that the statute applies to all judgments entered after § 13B was in effect. As judgment in this case did not enter until 1992, he argues that, in effect, the ad damnum has been statutorily erased; therefore, he claims not to be bound by the principles we have reviewed in part 2a of this opinion.

The plain language of the statute provides otherwise. When "the statute is unambiguous [and] the language employed is neither peculiar nor technical, but is comprised rather of familiar words commonly combined to express, as they do here, a simple thought . . ., we construe the statute according to the common and approved use of this language." *New England Med. Center Hosp., Inc.* v. *Commissioner of Rev.,* 381 Mass. 748, 750 (1980). The language that we have underscored emphasizes that the applicability of § 13B is the date of filing of the complaint, not the date of the entry of judgment.

Nevertheless, the plaintiff reasons that § 13B simply changes or regulates the semantics of pleading. It is procedural, the argument goes, so its proscription applies to all

pending and future actions that have not gone to judgment. That gets the plaintiff to the point where he rationalizes the judge's award of damages as he views the ad damnum as legislatively eliminated. The plaintiff, without any reference to statutory history, advances the argument that the proscription was a codification of past practice and that the Legislature intended to eliminate ad damnums in all personal injury actions because they were speculative and should not bind a trier of fact.[8]

Under this strained interpretation, the trier of fact might ignore the ad damnum because it was eliminated by statute, yet give no effect to the applicability clause of the legislation. We think such a construction makes no sense and is inherently wrong. "[A]ll legislation commonly looks to the future, not to the past, and has no retroactive effect unless such effect manifestly is required by unequivocal terms." *Lawton* v. *Commonwealth Gas Co.,* 400 Mass. 209, 212 (1987), quoting from *Hanscom* v. *Malden & Melrose Gas Light Co.,* 220 Mass. 1, 3 (1914). Here by the terms of St. 1981, c. 708, § 9, the Legislature declared that § 13B does not apply to complaints filed prior to July, 1987.

The judgment that was entered on February 19, 1992, is vacated, and the matter is remanded to the Superior Court for entry of a new judgment in favor of the plaintiff in the amount of the original ad damnum ($50,000).

*So ordered.*

---

[8]The prohibition against stating certain types of damages in the complaint should not be confused with the long-standing "prohibition" against informing the jury of the ad damnum for unliquidated claims. See *Goldstein* v. *Gontarz,* 364 Mass. 800, 816 n.15 (1974); Rule 7 of the Superior Court (1974).