JAMES S. BROOME vs. LUCY A. BROOME.

No. 94-P-1349.

Plymouth. May 19, 1995. - March 12, 1996.

Present: ARMSTRONG, DREBEN, & JACOBS, JJ.

*Superior Court,* Jurisdiction. *Jurisdiction,* Superior Court. *Practice, Civil,*
Relief from judgment. *Judgment,* Relief from judgment, Default. *Rules
of Civil Procedure.*

The Superior Court has jurisdiction under G. L. c. 231A to declare the
rights of parties under a separation agreement. [151]

In an action brought in Superior Court seeking damages and declaratory
relief with respect to child support obligations set forth in a separation
agreement, the judge abused his discretion in entering final judgment in
favor of the plaintiff after the defendant's default under Mass.R.Civ.P.
33 (a) for failure to answer interrogatories where the defendant acted
with reasonable promptness, in the circumstances, to cure the default
and answer the interrogatories, where the defendant filed a timely mo-
tion for relief from judgment before damages were assessed and final
judgment entered, where the plaintiff would have suffered no significant
prejudice from the allowance of the motion, and where the matter was
more appropriately resolved on its merits. [151-154]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 16, 1991.

A motion for relief from judgment, filed on January 18,
1994, was heard by *John J. O'Brien,* J., and a motion for as-
sessment of damages was heard by *Robert L. Steadman,* J.

*Christine A. Faro* for Lucy A. Broome.

*Douglas A. Hale* for James S. Broome.

JACOBS, J. By its terms and those of their 1983 judgment
of divorce, the separation agreement of James S. Broome and
Lucy A. Broome survived the judgment and retained inde-
pendent legal significance. That agreement, as modified in

1985,[1] contains provisions for "unallocated" payments by James to Lucy in the amount of $6,729.16 per month for her support and that of their three children, and for the cessation of those payments upon the "emancipation" of the children. In 1991, James brought this action in the Superior Court seeking a judgment pursuant to G. L. c. 231A, declaring that the parties' youngest child, Meredith, had become emancipated under the terms of that agreement. He also sought the return of support payments made by him after Meredith allegedly had become emancipated and while she was attending college. Emancipation is defined in the agreement as "attaining the age of twenty-three (23), becoming self-supporting, marrying, dying, or obtaining a four year college degree, whichever occurs earliest." The issue raised by James is whether Meredith's involvement in a wilderness camping expedition during the year between her completion of high school in 1989 and her commencement of college in 1990, and her alleged full-time employment during part of that year, rendered her "self-supporting" and, therefore, "emancipated."

This appeal essentially derives from the denial of Lucy's motion for relief from a default judgment stemming from her failure to make timely answers to interrogatories. The relevant procedural background is as follows: On October 21, 1992, approximately a year and a half after filing a timely answer to the complaint, Lucy sought and obtained leave to file an amended answer containing a counterclaim seeking damages for James's alleged misrepresentation of his income when the parties entered into and modified their separation agreement. On January 12, 1993, a judge allowed a motion by James to serve a second set of interrogatories on Lucy which addressed the counterclaim and certain affirmative defenses raised in her amended answer. Before the answers to these interrogatories were due, Lucy's attorneys filed a motion to withdraw from the case. When the answers were not filed when due, James filed an application under Mass.R.Civ.P. 33(a), as amended, 368 Mass. 906 (1976), requesting judgment in his favor. On April 2, 1993, James filed a reapplication under that rule requesting that Lucy's counterclaim be dismissed, that a default judgment enter against her in the

---

[1]The provisions of the agreement prior to this modification have no bearing upon the issues before us.

declaratory action, and that she also be defaulted and assessed damages with respect to the count seeking a refund.

In the latter part of April, 1993, Lucy, acting pro se, served James with a motion to extend the time for responding to the interrogatories and a motion to dismiss her own counterclaim. These motions and James's objection to them indicate the existence of a dispute over whether Lucy's former counsel and James's attorney had agreed to an extension of time to answer interrogatories. There is no indication in the record that Lucy's motion to dismiss her counterclaim was acted upon.

On June 4, 1993, Lucy's motion to extend was allowed, and she was granted until June 25, 1993, to respond. On the same day, James's reapplication under rule 33(a) was allowed "unless answers are filed on or before June 25, 1993." The docket indicates "NOTICE [of this order] SENT 9/14/93." In late September, 1993, James filed a motion seeking "a Default against . . . [Lucy] for failure to file Answers to Interrogatories . . . and to enter a Judgment of Dismissal against [Lucy] on behalf of [James] on [Lucy's] Counterclaim," and a request for assessment of damages. These soon were followed by Lucy's pro se request for additional time to retain counsel and object to James's motion. In support of this request, Lucy indicated she recently had arrived in Florida to tend to her ill mother, that the rights of Meredith were directly affected by the action, and that there was no urgency. In response, James noted his desire to avoid contempt proceedings caused him to continue paying support and accused Lucy, in effect, of engaging in a delaying tactic so that support payments would continue until December 18, 1993, when Meredith would reach the age of twenty-three.

By mid-October, 1993, an attorney had appeared for Lucy, and answers to the second set of interrogatories had been served on James, along with a motion to extend the time to answer those interrogatories. On November 12, 1993, separate default judgments were entered pursuant to rule 33(a), in favor of James on liability and dismissing Lucy's counterclaim. After Lucy's timely motion for relief from judgment filed on January 18, 1994, pursuant to Mass.R.Civ.P. 60, 365 Mass. 828 (1974), compare *Keenan* v. *Maybrook, Inc., ante* 144 (1996), was denied after hearing by the judge who ordered the default judgments (the motion judge), James's motion for assessment of damages was allowed by another judge who

found that "the judgment for liability establishes that . . . [Meredith] became emancipated before September 1, 1989," and that the parties' other children became emancipated by May, 1991. Accordingly, he assessed damages in the amount of $196,370.08, the total paid by James after May, 1991, together with interest and costs. This appeal followed the ensuing final judgment.[2] Subsequently, by stipulation, Lucy's appeal from the denial of her motion for relief from the judgment dismissing her counterclaim effectively was withdrawn.

1. *Jurisdiction.* There is no merit in Lucy's attack on the jurisdiction of the Superior Court. It is well established that "[t]he Superior Court ha[s] jurisdiction under G. L. c. 231A to declare the rights of the parties under the separation agreement." *Hills* v. *Shearer*, 355 Mass. 405, 407 (1969).

2. *Default.* Lucy based her motion for relief from the judgments entered against her on "clerical error" pursuant to rule 60(a) and "mistake, inadvertence, surprise, or excusable neglect" under rule 60(b)(1). Nothing in the record supports Lucy's claim of clerical error. The affidavit offered in support of the "excusable neglect" aspect of the motion describes a breach of an agreement extending the time to answer interrogatories caused by counsel for James; a lack of funds to hire a lawyer; inadequate legal knowledge that caused her to believe that filing a motion to dismiss the counterclaim "would remove the need to file Answers to the Interrogatories"; that she did not receive notice of the court's action on her motion to extend and James's reapplication under rule 33(a) "until a day or two before I was packing to move"; that she did not understand the significance of the court's order setting an answer deadline; and that she had a meritorious defense in that Meredith had not become emancipated as alleged by James.

Lucy's motion for relief from judgment was filed ap-

[2]No claim is made with respect to the timeliness of the notice of appeal, or that the default judgments of November 12, 1993, were other than interlocutory. See *Productora e Importadora de Papel, S.A. de C.V.* v. *Fleming*, 376 Mass. 826, 831-832 (1978); *Krupp* v. *Gulf Oil Corp.*, 29 Mass. App. Ct. 116, 118-119 (1990); *Buffum* v. *Rockport*, 36 Mass. App. Ct. 377, 379 n.2 (1994). Contrast *Roberson* v. *Boston*, 19 Mass. App. Ct. 595 (1985), in which the "final judgment" which was entered for failure to timely answer interrogatories was treated as marking the commencement of the time for making timely filing of a Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974), motion.

proximately one month after the entry on November 12, 1993, pursuant to rule 33(a), of the judgment of liability and well before damages were assessed and final judgment was entered on James's complaint. Notwithstanding the description in the third paragraph of rule 33(a) of the alternate relief provided for failure to answer interrogatories as "final judgment," that characterization may not be correct with respect to the determination of liability since damages had not yet been assessed. *Buffum* v. *Rockport*, 36 Mass. App. Ct. 377, 379 n.2 (1994). To the extent that Lucy's motion for relief addressed other than final judgments, it may have implicated the "good cause" standard of Mass.R.Civ.P. 55(c), 365 Mass. 823 (1974),[3] a less stringent standard than that of rule 60(b)(1). *Ibid*. See *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. 426, 430-431 (1979), for a discussion of the applicable standards under rule 60(b)(1). See also 10 Wright, Miller & Kane, Federal Practice & Procedure § 2692 (2d ed. 1983 & Supp. 1995). "[I]n various situations a default entry [under rule 55] may be set aside for reasons that would not be enough to open a default judgment." Wright, Miller & Kane, *supra*, § 2696, at 514-515.

In any event, we determine that the entry of a final judgment of default constitutes an abuse of discretion, whether reviewed under the rule 55(c) or the rule 60(b) standard. We do not quarrel with the motion judge's apparent conclusion that Lucy's delay in responding to the second set of interrogatories warranted some sanction. Had he limited his penalty to Lucy's counterclaim and had that counterclaim been the sole subject of this appeal, we would be disposed to affirm his disposition. It was, after all, the counterclaim to which the second set of interrogatories essentially was directed and the averments of that counterclaim which apparently fueled the delaying disagreement between Lucy's former counsel and James's lawyer. However, the default of Lucy as a defendant in the declaratory action and the denial of relief from that default stand on a different footing. Those actions deprive Lucy of her day in court on the issue of Meredith's emancipation.

The record indicates that not only did Lucy act with rea-

---

[3]Mass.R.Civ.P. 55(c), 365 Mass. 823 (1974), states: "For good cause shown the court may set aside an entry of default and, if a judgment has been entered, may likewise set it aside in accordance with Rule 60(b)."

sonable promptness to remove the default and to serve the answers once she received notice of the rule 33(a) decisions, but also that no significant prejudice is likely to befall James as a result of the grant of postjudgment relief, since the defaults were entered only slightly more than one month prior to Meredith reaching the age of twenty-three. Moreover, James's guarded complaint allegations that Meredith attended a wilderness camp in the year in question and "is believed to have worked full time from June, 1989 into February, 1990," of themselves, signal less than overwhelming proof of emancipation under the parties' agreement. Accordingly, even under the more stringent "excusable neglect" standards of rule 60(b), see *Berube* v. *McKesson Wine & Spirits Co., supra*, relief was here warranted.

The exercise of judicial discretion to grant relief from a judgment should favor resolution of disputes upon their merits rather than upon technical procedural grounds, *id.* at 429, particularly, when, as here, the procedural failure involves an ancillary aspect of the case, largely unrelated to the principal issue raised in the declaratory action. In these circumstances, enforcement of a default judgment should be a sanction of last resort.

Our analysis is colored by the fact that the subject of the declaratory action is a domestic relations issue involving, at least in part, the support of a child of the parties. Accordingly, the application of sanctions, in such circumstances as were presented to the Superior Court, should take into account "the traditional policy against default judgments in domestic relations cases." *Imprescia* v. *Imprescia*, 392 Mass. 101, 104 (1984). That policy is reflected in the absence of a counterpart to the default provisions of Mass.R.Civ.P. 55, 365 Mass. 822 (1974), in the Rules of Domestic Relations Procedure and the recognition that such a rule is inappropriate in domestic relations cases. See *Imprescia* v. *Imprescia*, 16 Mass. App. Ct. 378, 380 (1983), *S.C.*, 392 Mass. 101, *supra*, and authorities cited. Similar significance attaches to the deletion in Mass.R.Dom.Rel.P. 37(b)(2)(C) (1975), of the provision for judgment by default contained in its counterpart in the Rules of Civil Procedure. While these differences may be of slight import in an ordinary action in the Superior Court to enforce a separation agreement pursuant to the well established principles of *Knox* v. *Remick*, 371 Mass. 433

(1976), and its progeny, they are critical in any action seeking an interpretation of the meaning of the child support provisions of such an agreement.

Accordingly, the denial of the defendant's motion for relief from judgment is reversed and the default judgment "on liability," together with the judgment for damages, are vacated. The case is remanded to the Superior Court for further proceedings.

*So ordered.*