Sherman, P.J.
This is a Dist./Mun. Cts. R. A. D. A., Rule 8C appeal by defendant Jeffrey P. Reynolds (“Reynolds”) of a default judgment entered against him pursuant to Dist./Mun. Cts. R. Civ. R, Rule 37(d) for what the trial court termed Reynolds’ “clear and willful violation” of a court order to supplement responses to interrogatories propounded by plaintiff AT&T Universal Card Services Corp. (“AT&T”).
*220 The record indicates that on October 11, 1994, AT&T commenced this collection action to recover a $6,571.54 credit card balance allegedly owed by Reynolds, plus interest, attorney’s fees and costs. Reynolds’ November 14, 1994 answer included eleven affirmative defenses, four of which denied the legality or validity of any document, and the genuineness of any signature thereto, which was alleged by AT&T to be the basis of Reynolds’ liability for the credit card balance.
On January 3, 1995, Reynolds filed timely answers to AT&T’s interrogatories which admitted his receipt of both a Gold Mastercard issued by AT&T in 1992 and monthly statements on the credit card account. However, Reynolds’ answers denied, inter alia, that he owed the debt in question; that he had any “present recollection or record” of purchases made, or cash advances obtained, with the credit card; and that AT&T had provided any documentary evidence of his liability.
On February 2, 1995, Reynolds filed a motion to compel AT&T to respond to interrogatories and requests for production of documents made by Reynolds three months earlier. That motion and additional requests by Reynolds were heard in March, 1995. On the day of the hearing, AT&T finally furnished copies of monthly statements from June, 1992 through January, 1994 which reflected that periodic payments had been made on the account, as well as copies of fourteen cancelled checks payable to AT&T from a BayBank account of “Jeffrey P. Reynolds” in amounts corresponding to the payments deducted from the credit card account. The court denied Reynolds’ motion for attorney’s fees, ruled that his motions to compel had been “satisfied in open court” by AT&T, and took no action on Reynolds’ additional motions.[1]
On November 28,1995, AT&T filed a request for trial. The court scheduled a pre-trial conference and trial for, respectively, February 14,1996 and April 3,1996. Although the time for completing all discovery and trial preparation pursuant to S.O. 1-88.C.1 had expired at the end of the preceding November,[2] AT&T filed a motion to compel further answers to interrogatories on February 2, 1996 and marked the same for hearing on the day of the pre-trial conference.
After hearing, the court allowed AT&T’s motion for further answers to eight of its original twenty-three interrogatories. On March 19, 1996, Reynolds filed further answers in compliance with the court’s order. On March 20, 1996, AT&T filed motions *221 for sanctions and for default on the grounds that Reynolds’ supplemental answers were unresponsive, contradictory and evasive. Two days later, after hearing, the court ruled that Reynolds’ “pro forma but nonsubstantive responses [were] clear and willful violations of court orders,” and ordered a default judgment as a sanction for Reynolds’ noncompliance.
1. Reynolds contends initially that the trial court’s entertaining and allowing AT&T’s motion to compel, which was filed three months after the expiration of the permissible period of discovery in this case, violated that portion of S.O. 1-88.C.1. which states that such late discovery motions “shall be denied by the court, or allowed only upon the payment of reasonable costs, if the court is satisfied that any said motion could reasonably have been made within said twelve month period.” It is established, however, that the conduct and scope of discovery rest within the discretion of the trial court, GTE Products Corp. v. Stewart, 414 Mass. 721, 725-726 (1993), as provided for in the rules of civil procedure. Thus it was within the trial court’s discretion to allow AT&T’s motion despite the mandatory terminology of the standing order. See Bonnie W. v. Commonwealth, 419 Mass. 122, 123 n. 1(1994); Seebok v. Bay Yacht, Inc., 1994 Mass. App. Div. 151, 152 n.4.
2. Pursuant to Dist./Mun. Cts. R. Civ. R, Rule 37(d), a trial judge is authorized to impose a broad range of sanctions, up to and including default or dismissal, for a party’s failure to comply with a judicial discovery order. See generally Corsetti v. Stone Co., 396 Mass. 1, 26 (1985); Cole v. Anciporch, 25 Mass. App. Ct. 975, 977 (1988). Lesser, appropriate sanctions including monetary penalties, preclusive orders prohibiting the admission of certain evidence, claims or defenses; and even dismissals without prejudice may be visited upon the offending party or his counsel even where non-compliance with the discovery order was not wilful, in bad faith or the product of any culpable conduct.[3]
The ultimate sanction of default or dismissal, however, is generally appropriate only in “measurably aggravated circumstances,” Diamond v. Hanover Ins. Co., 1994 Mass. App. Div. 200, 202, involving repeated or blatantly egregious conduct. The imposition of such sanction “requires more careful scrutiny.” Gos v. Brownstein, 403 Mass. 252, 256 (1988).[4] Thus
the proper penalty to be imposed in each case rests within the broad, but not unfettered discretion of the trial judge. ... Dismissal [or default] is clearly the most severe sanction which can be imposed for the violation of a discovery order, and should never serve as the penalty of first resort. A trial court is not only authorized, but obligated, to consider conscientiously the utility of lesser, appropriate sanctions. ... No dismissal [or default] entered without a prior, careful balancing of the competing inter *222 est of affording the [defendant] his day in court and of effectively preserving [the plaintiff’s] right to necessary discovery ... can ever be equated with a sound exercise of judicial discretion [citations omitted].
Diamond v. Hanover Ins. Co., supra at 202.
3. Absent from the instant case is any pattern of persistent disregard of discovery orders, indifferent or dilatory failures after more than one opportunity or extension to satisfy the court’s demands, or any clearly defiant flouting of judicial dictates which would justify the sanction of default or dismissal. Compare, e.g., Roxse Homes Ltd. Partnership v. Roxse Homes, Inc., 399 Mass. 401, 405-406 (1987); Partlow v. The Hertz Corp., 370 Mass. 787, 790-791 (1976); Maywood Builders Supply Co. v. Kaplan, 22 Mass. App. Ct. 944, 945 (1986); American Velodur Metal, Inc. v. Schinabeck, 20 Mass. 460, 466-467 (1985); M. Clifton Edson & Son v. McConnell, 9 Mass. App. Ct. 930 (1980). See also, Buffum v. Rockport, 36 Mass. App. Ct. 377, 380-381 (1994). AT&T’s February 2, 1996 request was its first actual motion to compel Reynolds to file supplemental responses to the interrogatories he had answered more than a year before. After the court’s allowance of AT&T’s motion, Reynolds timely submitted supplemental answers, thereby demonstrating some effort to comply with the court’s discovery orders. See Bob Berman Assoc., Inc. v. Cross, 15 Mass. App. Ct. 1000, 1001 (1983). The default judgment in question was imposed as a sanction immediately thereafter.
AT&T’s dissatisfaction, and presumably the court’s, with the substance of Reynolds’ supplemental answers stems in large part from Reynolds’ failure to address in such answers the monthly statements and check copies furnished by AT&T months after the filing of Reynolds’ first set of answers. However, the eight interrogatories selected by AT&T for supplementation were peculiarly self-limiting and narrowly drawn in specific reference to the facts “relied upon” by Reynolds in formulating his affirmative defenses at the time he filed his answer. Construed literally, they did not per se require Reynolds’ response to the documentary evidence subsequently provided by AT&T.[5] AT&T did not request permission to propound a second set of interrogatories relevant to the documentary evidence; select other, more material interrogatories for supplementation; or file requests for admissions relative to the monthly statements and checks. More significantly, AT&T failed to utilize other, more pragmatic procedural mechanisms, such as a motion for summary judgment, to *223 test the continued viability of Reynolds’ general denial of any credit card liability.[6] For all that appears in the written record, Reynolds was ordered only to supplement his answers to the interrogatories in their original form.
However, it is clear from the parties’ arguments to this Division that hours of trial court hearing time were devoted to an exhaustive clarification of Reynolds’ obligation to supplement his interrogatory responses in the light of the documentary evidence furnished by AT&T. Apart from considerations of judicial economy and efficiency, it was within the trial court’s discretion to so direct the conduct of the parties’ discovery in an effort to limit and frame the issues for trial. GTE Products Corp. v. Stewart, supra at 725-726. In view of the court’s extensive hearing, the claim by Reynolds’ counsel that all of the supplemental answers he drafted were fully and properly responsive is at best specious. Not only do the supplemental responses generally fail to address the monthly statements and checks which constituted some evidence of Reynolds’ responsibility for the credit card account in question, but a number of the responses are also inconsistent with Reynolds’ earlier answers, contradictory or so less than forthcoming that they bordered on the frivolous or evasive.[7] The all too transparent efforts by Reynolds’ counsel in these instances to have his client avoid a direct admission of any credit card liability at the expense of AT&T’s right to pursue legitimate discovery warranted appropriate sanc *224 tions by the trial court. The adversarial character of litigation does not absolve a party or his counsel of the obligation to conduct such litigation in compliance with the rules of civil procedure.
In short, the court’s Rule 37(d) order for a default judgment as a discovery sanction “exceed[ed] the bounds of reasonableness.” Henshaw v. The Travelers Ins. Co., 377 Mass. 910, 911 (1979). The court’s order is hereby vacated, and this case is returned to the trial court for a consideration and imposition of “appropriate sanctions” against Reynolds “short of being deprived of a trial on the merits of the plaintiff’s claim.” Ticchi v. Ambassador Cab, Inc., 11 Mass. App. Ct. 912 (1981). In the circumstances of this case, the assessment of attorney’s fees or the entry of an order precluding Reynolds’ introduction of certain evidence or defenses constitute the sanctions which may be deemed appropriate.

 AT&T argues that at the March, 1995 hearing, the trial court also ordered Reynolds to supplement his answers to interrogatories. AT&T had not filed a motion to compel or clarify at that time, and Reynolds’ interrogatory answers were not before the court. AT&T’s only support for its contention is a two-page “informal transcript” of what purports to be the conclusion of the hearing on Reynolds’ motions, which AT&T prepared itself from a cassette copy of the hearing tape and attached to its brief to this Division. AT&T’s “informal transcript” suggests that in the final moments of the court’s two hour hearing on Reynolds’ motions, AT&T complained about Reynolds’ “unusual responses” to interrogatories. The court purportedly indicated that as Reynolds had been given “documentary evidence” of his debt at the hearing, he should within ten days supplement his answers to two interrogatories. However, the court’s fingí written order of March 15, 1995 pertains exclusively to its rulings on Reynolds’ motions. Neither that order, the trial court docket, nor the record appendix before us references any additional March, 1995 instruction by the court to Reynolds to supplement his interrogatory answers. Nor is there any indication in AT&T’s brief that it requested Reynolds to include the “informal transcript” in the appendix, or designated it for inclusion pursuant to Dist./Mun. Cts. R. A. D. A., Rule 18(b). We note that AT&T delayed for almost a year, until February 2, 1996, before filing'a motion for sanctions in reference to die court’s purported order of March 15,1995. AT&T’s motion was denied.

 The Standing Order mandates: “It shall be the responsibility of counsel to complete service and the preparation of his or her case by the end of the twelfth full month after filing [of the action]. To that end ... all discovery shall be completed and all motions, ... all discovery motions and such other motions as are prescribed by the court, shall be filed and caused to be heard by the end of the twelfth full month ...”

 Rule 37(b)(2), which originally provided for sanctions “if a party wilfully fail[ed] to obey an order,” was amended in 1984 to eliminate the word “wilfully.” The amendment was designed “to increase compliance with discovery orders, by making it easier for parties to achieve, and judges to award sanctions, for failure to comply ...” Greenleaf v. Massachusetts Bay Transp. Auth., 22 Mass. App. Ct. 426, 430-431 (1986).

 It was held in Gos v. Brownstein that while “sanctions less severe than dismissal may be imposed without further findings or explication,” an order for default or dismissal renders it “necessary for an appellate court to know if the judge’s action was predicated on a finding of wilfulness, bad faith or fault, unless it is clear that such determination was implicated and warranted.” Id. at 256. Distinguishing Greenleaf v. Massachusetts Bay Transp. Auth., supra at 430, the Court noted that “the Appeals Court concluded that the imposition of the sanction of default pursuant to Mass. R. Civ. R, Rule 37(b)(2), does not require a showing that the opponent’s failure to comply with a discovery order was willful. It is important to note, however, that in Greenleaf there was such a showing.” Gos v. Brownstein, supra at 257 n.5.

 Interrogatory number 21, pertaining to Reynolds’ ninth affirmative defense, and Reynolds’ responses are illustrative. “21. QUESTION: State in full and complete detail each and every fact you relied upon in making the statements contained in your answer in the paragraph labeled NINTH DEFENSE, identifying each and every document you claim to be invalid.” FIRST RESPONSE: ‘The documents declared upon by the Plaintiff are unsigned, unendorsed and partially illegible copies without my signature. I deny the validity of these documents.” SUPPLEMENTAL RESPONSE: “The paragraph labeled NINTH DEFENSE in my answer to the plaintiff’s complaint, wherein I deny the legality and validity of any documents declared upon by the Plaintiff and call upon and demand that the plaintiff prove their validity, genuineness and bona fides, was made in response to the plaintiff’s complaint, and the documents declared upon therein. The plaintiff’s reference in its Motion for an order Compelling Further Answers to Interrogatories to “copies of the monthly billing statements” implies that such documentary evidence was contained in or appended to the plaintiff’s complaint which is not the case. The documentary evidence provided in or appended to the plaintiff’s complaint consists of a purported Credit Agreement which I deny ever receiving or signing. It is thus unsigned, unendorsed and partially illegible document, the sole appendage to the plaintiff’s complaint, which I claim to be invalid and not the basis for any legal liability on my part by way of my answer to the complaint.”

 Reynolds’ denial of any liability for credit card charges is apparently based on nothing more than the meritless defense that the sine qua non of AT&T’s right to recover is its production of a written credit card agreement signed by Reynolds. See, however, G.L.c. 255D, §1. His only remaining “defense” as set forth in his interrogatory answers was that he had no recollection of any purchases made, or cash advances obtained, with the credit card. Such answers, binding upon Reynolds, would have been insufficient to defeat any summary judgment motion by AT&T.

 Reynolds admitted in his first set of interrogatory answers that he had a credit card account with AT&T based on a Gold Mastercard he obtained through the mail and that he had received monthly account statements. Despite these admissions, AT&T’s furnishing of copies of statements showing account charges and payments by Reynolds and of payment checks, and the trial court’s extensive hearing, Reynolds gave the following supplemental responses to interrogatories 19 and 20: “19. QUESTION. State in full and complete detail each and every fact you relied upon in making the statements contained in your answer in the paragraph labeled Seventh Defense, specifying each and every occurrence which you claim was a mutual mistake or misrepresentation. RESPONSE. Inasmuch as relevant documents have not been provided to me, I am unable to adequately respond to this interrogatory at the present time and reserve the right to further respond. SUPPLEMENTAL RESPONSE. If any credit was ever extended by the plaintiff in my name it would appear to be the result of a mutual mistake. No other facts were available at the time my attorney claimed this defense on my behalf in my answer to the plaintiff’s complaint.” “20. QUESTION. State in full and complete detail each and every fact you relied upon in making the statements contained in your answer in the paragraph labeled EIGHTH DEFENSE, identifying each and every document which bears a signature you deny. RESPONSE. Objection. See response to question 18 above. SUPPLEMENTAL RESPONSE. The Plaintiff, by this interrogatory, is attempting to shift both the burden of proof and the burden of production in the case in chief from the Plaintiff to me. As the Plaintiff has neither alleged nor produced any document bearing my signature which might constitute evidence of a debt owed, I can only state at this juncture that I am not aware of any document alleged to bear my signature which might evidence a debt owed to the Plaintiff. Without laboring the obvious, I certainly cannot identify documents which I deny ever having signed. No documents containing my purported signature, or any signature purporting to evidence a debt, were included in or with the Plaintiff’s complaint at the time I filed my answer to the same.”