Driscoll, PJ.
This matter represents an appeal from an entry of separate and final judgment on some of the counts of this civil action, the denial by the motion judge of Defendants’ motions to remove default on those counts upon which judgment entered and the denial of Defendants’ motion for reconsideration. For the reasons stated below, we reverse. The judgment shall be vacated and set aside. Defendants’ motion to remove default shall be allowed and the case shall be returned to the trial list.
FACTUAL BACKGROUND
This dispute arose out of an apartment lease executed between Plaintiffs, Amanda Saisselin, Stephanie Charest, the lessees, and Defendant, Thomas McElhinney.[4] The premises leased consist of a third floor apartment at 19 Burney Street in the Mission Hill section of Boston. The lease was executed on February 18, 2009 by the lessees and on February 20,2009 by McElhinney. It was to begin on September 1,2009 and to end on August 31,2010. There was an addendum to the lease executed by the parties on the same days. The addendum provided, inter alia, that the first and last months’ rent and the security deposit, each in the amount of $2100, was to be paid by March 18, 2009. Those amounts were paid to Jacob Realty which forwarded the checks to McElhinney. In addition, the lessees also paid a finder’s fee to Jacob Realty. Thus, the total expenditures before taking possession of the leased premises was $8400.
On September 1, 2009, the lessees did not move into 19 Burney, having leased another apartment instead. McElhinney considered the lessees in breach of the lease. He retained the first and last months’ rent, but returned the security deposit check, uncashed, to Jacob Realty. Ultimately, Jacob Realty refunded the security deposit and the finder’s fee to Plaintiffs.
On January 15, 2010, Plaintiffs filed a complaint in the Central Division of the Boston Municipal Court. They named two defendants, Jacob Realty and Thomas *107 McElhinney, as Trustee of 19 Burney Street Realty Trust. On the same day, Plaintiffs filed an ex parte motion to attach real estate upon which counsel appeared before the court. The court denied the motion for an ex parte attachment, but instead issued a short order of notice and marked the motion up for January 21, 2010. The court strongly suggested that counsel obtain in hand service, “if possible.” The court went on to advise counsel that if he could not obtain in hand service, then “you better be able to demonstrate that the service was good because the Trustee maintains an office, or an address, or a residence, or something, and should have gotten that notice or prevented ... or didn’t accept it. Something that persuades the Court that service is good.”[5]
Counsel also filed a motion for the appointment of a special process server. That motion was allowed.
Notwithstanding the court’s directive and notwithstanding the allowance of the special process server, Plaintiffs’ counsel made no attempt to serve McElhinney in hand and made no attempt to serve him at all for the January 21, 2010 court date until January 19, 2010 when the process server left copies of the pleadings at 19 Burney Street and sent other copies by first-class mail to the same address. Plaintiffs’ counsel determined that address to be the proper one by accessing a “white pages” website which listed a telephone number for McElhinney at 19 Burney Street. On the lease executed by all the parties, McElhinney’s address is given as 46 Harlem Street, Dorchester.[6]
On January 21, 2010, Plaintiffs’ counsel appeared before a different judge on the motion to attach real estate.[7] He did not file the original return of service, representing to the Court that the process server’s wife had emergency surgery. As a result, he had not been provided with the original return of service, but filed a copy of the affidavit of service with the Court instead. Counsel represented to the Court that the original return of service was in the mail.[8] McElhinney did not appear, nor did any attorney appear on his behalf. The court allowed the attachment.
McElhinney, apparently, does not reside at 19 Burney Street. He learned about the lawsuit on January 31,2010 when one of his tenants gave him an envelope which he found at 19 Burney Street. In addition to the pleadings, there was also attached a copy of a Chapter 93A demand letter dated November 2, 2009 which had been mailed to 46 Harlem Street in Dorchester. McElhinney immediately forwarded this material to his lawyer.
On February 1, 2010, Defendant’s counsel telephoned Plaintiffs’ counsel to inform him that he was representing McElhinney, that his client had only just gotten notice of the action and that McElhinney had never received the 93A letter since *108 he had moved from Harlem Street in June, 2009. He further advised Plaintiff’s counsel that McElhinney owned the property at 19 Burney individually and not as the trustee. Both counsel also discussed filing Defendant’s answer within twenty days.
On February 2, 2010, Plaintiffs’ counsel filed an amended complaint in which he added McElhinney individually and also added another trust, Burney 19 Realty Trust. He also filed an ex parte motion to modify the writ of attachment to add the additional Defendants. On February 3, 2010, he appeared before the Court on his motion. Plaintiffs’ counsel filed the amended complaint and the new motion and appeared before the court without notice to Defendant’s counsel whom he knew to be representing McElhinney, albeit he had yet to file an appearance. The judge was the same judge before whom Plaintiffs’ counsel appeared before on January 21, 2010. The judge queried counsel as follows, “You haven’t heard from either Mr. McElhinney or any representative of his — ?” Counsel replied as follows, “I want to be clear with the Court. We got a phone call I think yesterday or the day before by someone who said that he was calling on behalf of Thomas McElhinney... and he ... this fellow had not filed a Notice Appearance, not... sent us a letter of representation.” The Court issued two additional writs. Once again, Plaintiffs’ counsel served Defendants at 19 Burney Street.
On February 9, 2010, Defendants’ counsel filed an answer on behalf of McElhinney individually and on behalf of 19 Burney Street Realty Trust. On the same day, the docket reflects that the clerk’s office scheduled the case for case management conference on April 29, 2010. A notation “Notice faxed to both parties” appears in the docket entry. Counsel did not file an answer on behalf of Burney 19 Realty Trust.[9]
On March 31, Plaintiffs’ counsel requested a default against Burney 19 Realty Trust pursuant to Rule 55(a). He did not notify Defendants’ counsel of his request despite now being aware that the latter represented McElhinney personally and the 19 Burney Street Realty Trust. A default entered against Burney 19 Realty Trust.
On April 29, 2010, counsel for Defendants did not appear for the case management conference. The remaining two Defendants were defaulted for failure to attend the case management conference. Defendants’ counsel was notified of the default the next day.
On May 17, 2010, Defendants’ counsel filed a motion to remove the defaults and requested that it be heard on May 27, 2010.
Both counsel appeared before the Court on May 27,2010. Plaintiffs’ counsel filed a lengthy opposition to Defendants’ motion to remove default, a copy of which he gave to Defendant’s counsel in court the morning of the hearing. Among other things, Defendants counsel represented to the court that he had never gotten notice of the case management conference scheduled on April 29, 2010. The court continued the matter to June 3,2010 to give counsel more opportunity to read the opposition.
On June 3,2010, both counsel appeared before the same judge before whom they *109 appeared on May 27, 2010. Counsel for Defendants advised the court that he had never received the fax from the court, that he never practiced in this court and thought that notification of the case management conference would come in the mail as it apparently does from other courts.[10] By now, counsel realized that Burney 19 had been defaulted for failure to file a responsive pleading and he asked the court to remove that default as well. The motions were supported by the affidavit of counsel.
Based on the objection of Plaintiffs’ counsel that there was no affidavit by Defendants, the Court denied the motion to remove the defaults "without prejudice.”
Thereafter, the parties engaged in mediation, to no avail.
On August 16,2010, Defendants’ counsel renewed his motions to remove defaults and requested a hearing on August 26, 2010.
On August 26, 2010, the parties appeared before yet another judge. Plaintiffs’ counsel opposed the removal of the defaults as to all counts, but in particular to Count IV, the Chapter 93A claim, and Count V, the security deposit claim, arguing that there were no meritorious defenses to those claims.[11] Defendants’ counsel argued that there were meritorious defenses. Specifically with respect to the security deposit, he argued that the tenancy never actually began. Consequently, McElhinney immediately returned the security deposit when Plaintiffs failed to take possession of the premises. With respect to the 93A claim, he argued that his client had never been served with the demand letter, that the first time he saw it was when he was served with the complaint and the letter was attached.
The Court took the matter under advisement. Later that day, the Court rendered a decision, denying the motion to remove default as to Count IV and Count V and allowing the motion as to the remaining counts.
On September 8, 2010, Defendants’ counsel filed a motion for reconsideration before the same judge. The parties appeared before the Court on September 14, 2010. The motion was denied.
Both parties appeared before the same judge on January 4, 2011 for an assessment of damages hearing. Plaintiffs’ counsel requested that a separate and final judgment enter on Counts IV and V and that damages be awarded in the amount of $15,718.96. Of that amount, $12,095.00 was a claim for attorney’s fees. The Court took the matter under advisement and on January 7, 2011 assessed damages in the amount of $15,718.96. Subsequently, Defendants filed this appeal.
RULINGS OF LAW:
1. Rule 55 (at default as against Burnev 19 Realty Trust Rule 55(a) provides as follows:
*110 When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.
Entry of default pursuant to this rule is a ministerial act by the clerk. It contemplates a situation where affirmative relief is sought and where a party has failed to defend. Normally, a party who has failed to defend is not entitled to notice of the request for default and, in fact, a clerk can enter such a default on his or her own. National Grange Mutual Insurance Co. v. Walsh, 27 Mass. App. Ct. 155, 156 (1989). However, in this case the entry of the default was prompted by Plaintiffs’ counsel, while knowing that Defendants were represented by counsel and while knowing that he had already filed responsive pleadings to the actions against the other two Defendants. There is a reasonable inference that counsel most certainly would have filed an answer on behalf of Burney 19 had he realized that it also had been sued. At the very least, he was entitled to notice of the Rule 55(a) request.[12] Feeney v. Abdelahad, 6 Mass. App. Ct. 849, 850 (1978); Accord, Muniz v. Vidal, 739 F. 2d 699, 700-701 (1st Cir. 1984).[13]
Rule 55(c) provides for the setting aside a default as follows:
For good cause shown the court may set aside an entry of default and, if a judgment has been entered, may likewise set it aside in accordance with Rule 60(b).
This rule is clearly intended to address the type of situation that arose in this case, namely the inadvertent default. The “good cause” standard is less stringent than that of Rule 60(b). Broome v. Broome, 40 Mass. App. Ct. 148,152 (1996). Given the plain language of the rule, the stricter requirements of Rule 60(b) do not apply in a situation, as here, where no default judgment had entered at the time of Defendants’ motion to remove default. The judge before whom the parties appeared on June 3, 2010 denied the motion, at Plaintiffs’ counsel’s urging, for failure to provide affidavits by Defendants. Neither Rule 55(c) nor Rule 60 requires an affidavit executed by a party. If a party were proceeding under Rule 60(b), it might be advisable and even necessary to provide a party’s affidavit to explain the circumstances surrounding the basis for the motion. In this instance, however, there is nothing that an affidavit by McElhinney could add to the equation. Using the less stringent standard of “good cause shown,” Defendants’ counsel made a prima facie showing that it was through *111 inadvertence that he had failed to file an answer for Burney 19, having already filed answers on behalf of McElhinney and the other trust. By denying the motion for the reasons stated, the judge on June 3, 2010 abused her discretion given counsel’s intention to represent all parties, the fact that no default judgment had entered, the relatively short time that had elapsed between counsel’s becoming aware of the default and his timely filing of the motion to remove the default. Greenleaf v. Massachusetts Bay Transportation Authority, 22 Mass. App. Ct. 426, 429 (1986); Feeney, supra, at 850.
2. Default for failure to attend the case management conference.
Mass. R. Civ. R, Rule 16, provides that the court in its discretion may require attorneys for parties in civil actions to appear before the court for a conference. The purpose of such a conference is to address issues that have arisen in the litigation or are likely to arise in the future. These conferences, inter alia, may relate to the narrowing of issues, outstanding discovery, or settlement.
Byway of bringing some uniformity and consistency to these conferences, there is a Joint[14] Standing Order, 1-04, that governs civil case management. The stated purpose of Standing Order 1-04 is “to establish case management procedures that will facilitate the prompt and efficient disposition of civil cases and reduce the expense and delay of civil litigation in the Boston Municipal Court Department and the District Court Department.”
Section III of the standing order provides that a “case management conference” shall be scheduled, upon the filing of an answer by the defendant, within four months and that the parties should be given notice of the case management conference. The order is silent as to the manner of notification. This section further requires counsel or a pro se party to appear in person. The court is authorized to impose sanctions, including default, “for failure to attend the conference without good cause.”
In this case, the docket reflects that upon the filing by Defendants’ answer on February 9, 2010, counsel were notified by facsimile of the case management conference on April 29, 2010 less than two months later. When Defendants’ counsel did not appear on April 29, 2010, his clients were defaulted. During his numerous court appearances since then, counsel has repeatedly represented to the various judges before whom he appeared that he never received the fax. That contention is uncon-troverted. In fact, it is supported to a degree by the notation on the docket at a later date, “fax not responding,” indicating any number of possibilities including the possibility that fax number is incorrect.
In any case, the decision whether to lift a default on a party for failure to appear at any court event, the notice of which had not been received, certainly falls into that category of “good cause shown.” Contrast this case to that of Eyal Reporting Service, Inc. v. Gouin, 2006 Mass. App. Div. 99 wherein, the case management conference was continued several times, defense counsel was aware of a scheduled conference demonstrated by her calling the court to say that she was too exhausted to appear, a default entered and later, a default judgment, before counsel sought to lift the default.
*112 As in the case of the Rule 55(a) default, there was “no harm, no foul.” No judgment had entered at the time that Defendants’ counsel filed his motion to vacate the default. Once again, the motion judge on June 3,2010 abused her discretion by denying the motion to vacate default for failure to submit an affidavit by McElhinney in support of the motion. Greenleaf, supra; Feeney, supra. There is no such requirement for lifting a default, nor would McElhinney’s affidavit add anything to the representations of counsel that he never received notice of the case management conference
3. Denial of Defendants’ motions as Counts IV and V. Since the June 3,2010 judge denied Defendants’ motions to vacate default “without prejudice,” after unsuccessful mediation, counsel renewed his motions. On August 26, 2010, the court, apparently, adopted the argument of Plaintiffs’ counsel that there were no meritorious defenses to Count IV, the Chapter 93A claim, and Count V, the security deposit claim, resulting in the anomalous decision of denying the removal of the default on those two counts and allowing it on the remaining five counts where all of the counts arise out of a single transaction, namely, a residential lease, and all the factual allegations are common to all counts of the complaint.
Furthermore, there are meritorious defenses raised. McElhinney maintains that Plaintiffs never took possession of the premises and, as a consequence, he immediately returned the security deposit. Secondly, he maintains that he never received the Chapter 93A letter as it was mailed to an address at which he no longer lived.
Granting the removal of the default on some claims and not on others constitutes the type of arbitrariness and capriciousness which appellate courts look to in determining whether there was an abuse of discretion by the motion judge. Greenleaf, supra; Feeney, supra.
“The exercise of judicial discretion to grant relief from a judgment should favor resolution of disputes upon their merits rather than upon technical procedural grounds....” Broome, supra, at 153.
In light of our decision to reverse the denial of the removal of the defaults as to Counts V and VI, we do not address the correctness of the court’s judgments on these two counts.
We also rule that the equities of this case demand reversal. We find that Plaintiffs’ counsel, in its conduct of this case, sailed very close to the wind, ethically speaking. First, counsel ignored the very explicit direction of Judge Dougan as to the proper service of this action. Secondly, when appearing before the court, ex parte, on February 2, he was less than forthright about his contacts with Defendants’ counsel. There were several other instances where a more professional approach by Plaintiffs’ counsel could have led to a resolution of this case either by settlement or by trial rather than this completely unnecessary appeal.
Appeal allowed. Case remanded to be returned to the trial list at the Central Division of the Boston Municipal Court.

 There was a third lessee who is not part of this lawsuit.

 This court has had the benefit of the transcripts of all proceedings in this matter.

 At an earlier time, Plaintiffs claim that they served a Chapter 93 A letter on McElhinney at 46 Harlem Street.

 The docket indicates that the papers were to go back before the judge who had originally heard the ex parte motion the 21st but for reasons unknown, that did not happen.

 The docket reflects that the proof of service was received by the clerk’s office on February 2, 2010, twelve days after the representation that it was “in the mail.”

 Either Defendants’ counsel was unaware that Burney 19 Realty Trust was a defendant or he failed to file an answer on that Defendant’s behalf through inadvertence likely because of the similarity of the names of the two trusts.

 At a later time, August 26, 2010, the clerk’s office endeavored to send counsel for Defendants a facsimile and according to the docket sheet, there is a notation, “fax not responding.”

 There are seven counts to Plaintiffs’ complaint: Count I, Breach of Contract; Count II, Breach of Implied Dufy of Good Faith and Fair Dealing; Count III, Breach of Habitability; Count IV, C 93A; Count V, Security Deposit; Count VI, Constructive Eviction and Count VII, Quiet Enjoyment Claim. All counts arise out of the same factual allegations.

 In view of the fact that the failure to file an answer to the Burney 19 action only was so obviously an oversight by Defendants’ counsel, we think that Plaintiffs’ counsel, as an officer of the court and as a matter of professional courtesy, simply could have contacted opposing counsel to inquire as to his intentions with respect to Burney 19, particularly in light of the fact that Plaintiffs’ counsel did not properly serve any of these parties ab initio.

 In Muniz v. Vidal, the parties, as here, had also engaged in settlement discussions.

 Joint, meaning District Court and Boston Municipal Court.