LoConto, P.J.
Michael J. O’Malley, d/b/a Kelly Realty Trust, brought suit against Sabir H. Moghul, M.D. in the Springfield District Court for the damages resulting from the defendant’s failure to purchase the plaintiff’s property pursuant to an agreement between the parties. Fleet Bank of Massachusetts commenced this action against Dr. Moghul and his professional corporation to recover damages represented by the costs and legal fees incurred by the bank in anticipation of granting loans to the defendants pursuant to their agreement. The cases were consolidated and tried on July 23 and 24, 1997. The court found that the defendants breached the contracts and awarded damages to the plaintiffs. The defendants brought this appeal pursuant to Rule 8C, of the District/Municipal Courts Rules of Appellate Division Appeal. In addition to responding to the parties’ requests for findings of fact and rulings of law, the trial judge made subsidiary findings and rulings as to liability. After a subsequent hearing, the judge made supplemental findings and rulings with respect to damages. The trial judge’s findings are entitled to great deference and should not be reviewed where they are supported by any reasonable review of the evidence. Hirshom v. Zenith Products *287 Corp., 1997 Mass. App. Div. 183. “The credibility of the witness is for the trial judge to determine and any determination will not be set aside unless clearly erroneous.” George v. Quincy Coop. Bank, 5 Mass. App. Ct. 771 (1977). The trial judge’s findings are clear and concise and are supported by the evidence. We will not draw different inferences from the facts found. A summary of those facts, taken from the judge’s findings, are as follows.
With respect to the claim by Michael J. O’Malley, d/b/a Kelly Realty Trust, the judge found that Mr. O’Malley was the owner of a building at 287 State Street in Springfield, and that Mahmoud Tolba, a/k/a Newton Howard, trustee and beneficiary of Scientific Technologies International Really Trust, was a tenant. On about December 15,1992, a purchase and sale agreement was signed between O’Malley and Tolba for the sale of 287 State Street, including adjacent lots. In May, 1993, O’Malley brought a Summary Process action in the Springfield District Court against Tolba because he was behind on his rent. On the trial date, the defendant, Dr. Sabir H. Moghul, accompanied his friend Mahmoud Tolba to court. During a conference outside of the courtroom, Dr. Moghul agreed that he would personally guarantee payment of any rent owed and that he was interested in purchasing the subject property. On that day, O’Malley and Tolba signed an agreement for judgment. This agreement revived the purchase and sale agreement of December 15, 1992. The judge found that O’Malley and Dr. Moghul met in the summer and in September, 1993, and discussed pertinent information regarding the operation of the building. Material was given to Dr. Moghul. Dr. Moghul suggested he was interested in purchasing the property. At a subsequent meeting, Dr. Moghul informed O’Malley that he would be receiving an assignment of Scientific Technologies International Realty Trust’s interest as a party to the purchase and sale agreement from Mr. Tolba. On November 22, 1993, Mahmoud Tolba signed an assignment as the agent of Dr. Moghul. Mr. O’Malley also agreed and signed the document. At the time and date set for the closing, December 29, 1993, Dr. Moghul failed to appear. Mr. O’Malley was unable to sell the property and the mortgagee bank commenced a foreclosure. Approximately one year after the closing date, in lieu of foreclosure, O’Malley deeded the property for forgiveness of the $186,838.46. He also paid back taxes and attorneys’ fees. In addition to costs and expenses, including costs associated with a personal bankruptcy filing, the trial judge ruled that Mr. O’Malley was entitled to the difference between the contract price of $340,000.00, and the fair market value on the date of the breach. The fair market value was determined to be $186,838.46.
The defendant is aggrieved by the trial judge’s ruling that where a contract as a whole is assigned there is no separation between the benefits and the burdens. Additionally, he claims error in the trial judge’s following rulings: that Tolba was an agent of Moghul with regard to the purchase of the building; that a valid Purchase and Sale Agreement existed between O’Malley and Moghul; that Moghul breached his contract with O’Malley; that O’Malley suffered damages; and lastly that the fair market value of the property on the date of the breach was $186,838.46.
With respect to the claim by Fleet Bank, the judge found that Mr. Accosi, a bank representative, met with Dr. Moghul on September 15, 1993, regarding a loan to purchase the property at 287 State Street, and that a loan application was presented to and approved by the loan committee in the amount of $270,000.00. Subsequently, Mr. Accosi met with Dr. Moghul to review the terms of the commitment letter. At the doctor’s request, a term relating to proof of malpractice insurance was omitted. Upon receipt of the commitment letter, the bank ordered a 21E exam and a real estate appraisal. Mr. Tolba contacted Mr. Accosi initially informing him that the doctor wished to obtain title in the name of a trust, but thereafter informed him that the doctor wished title in his own name. The trial judge allowed *288 a requested finding that Dr. Moghul and Sabir H. Moghul M.D., P.C. executed a commitment letter dated September 20, 1993. Mr. Accosi referred the matter to Attorney Paul Maleck to process the loan. Attorney Innarelli received a call from Mr. Tolba, who introduced himself as Dr. Moghul’s agent and requested that he prepare an assignment of the Purchase and Sale agreement. The assignment was prepared and signed by Tolba, as agent for Dr. Moghul.[3] The judge found that Dr. Moghul informed Attorney Maleck that Tolba had his authorization to act in his behalf with regard to the purchase of the building. Attorney Maleck searched the title and prepared the documents in preparation of the closing. On or about December 23,1993, Attorney Maleck contacted Dr. Moghul regarding the closing and Dr. Moghul indicated that he did not know anything at all about the closing. The defendants claim that no enforceable contract existed with the bank, that in any event there was no breach and furthermore, the bank suffered no recoverable damages. In addition, the defendants claim that the judge erred in finding that their actions constituted a violation of chapter 93A.
Assignment. Although the issue arose in a non-land sale context, in Chatham Pharmaceuticals, Inc. v. Angier Chemical Co., 347 Mass. 208 (1964), the court stated that “whether the assignees impliedly promised to perform the assignor’s duties thereunder is a question of interpretation of the assignment, read in the context of the circumstances.” In that case, the court felt “constrained” to hold that in light of the undisputed circumstances, the assignees did not assume the obligations under the agreement. It found that the intentional omission of any provision to assign obligations, where there is a provision, under certain circumstances to permit the other party to assign rights or obligations, is not an assignment of any obligation. Although no Massachusetts appellate case deals directly with an assignment of a Purchase and Sale Agreement, by implication it would appear we accept the rule recognizing that an assignee “steps into the shoes” of the assignor in a broadly worded assignment of a land sale contract. See Chatham at footnote 3. That interpretation is consistent with the Uniform Commercial Code, G.L. chapter 106, §2-210(4), and the RESTATEMENT (SECOND) OF CONTRACTS §328. The evidence and the law supports the judge’s finding that the clear intention of the parties included a delegation of duties.
Agency. Whether a person has apparent authority to act on behalf of another is a question of fact, Consolidated Rail Corp. v. Hallamore Trans, Inc., 394 Mass. 56 (1985), and the trial judge’s finding that Tolba was the defendant’s agent will not be set aside unless clearly erroneous. Apparent authority exists when conduct by an alleged principal causes a third person reasonably to believe that the alleged agent has the authority to enter into negotiations or to make representations as his agent. If a third person changes his position in reliance on this reasonable belief, then the principal is estopped from denying that the agency is authorized. Hudson v. Massachusetts Property Insurance Underwriting Association, 386 Mass. 450, 457 (1982). The judge’s findings are supported by the evidence. Michael O’Malley testified that he had conversations with Dr. Moghul in the summer of 1993, and that the latter maintained that he intended to purchase the property. In addition, he testified that he observed Dr. Moghul in and out of his building on many occasions and that in conversation with him, Dr. Moghul acknowledged that he had the money and would own the building by the end of the year. In his dealings with Fleet Bank, Dr. Moghul represented that he wanted to purchase the building and provided a commitment letter and negotiated the terms of the letter to accomplish *289 that result. The judge’s ruling that the defendants are now estopped from denying that the agency is authorized is supported by the evidence.
Damages. After a separate hearing, the judge made supplemental findings of fact and rulings of law with respect to damages recoverable by the plaintiffs for the defendants’ breach. As to Mr. O’Malley’s claim, he correctly ruled that “[Tjhe aim in measuring damages in the event of a breach of a sale of land is to place the injured party in as good a condition as he or she would have been in had the contract been performed. In most cases the measure for a breach of a land sale contract is the difference between the contract price and the actual fair market value at the time performance was to have occurred, plus any incidental costs incurred.” See Old Colony R.R. v. Evans, 6 Gray 25 (1856), and 5 CORBIN, CONTRACTS §1098A (1964). The issue is what is the fair market value of the property on the date of the breach. The definition of fair market value is “the highest price which a hypothetical willing buyer would pay to a hypothetical willing seller in an assumed free and open market.” Epstein v. Boston Housing Authority, 317 Mass. 297, 299-300, 135 (1944). “An important aspect of this principle is that if a party suing for breach of contract has sustained a loss as a result of a breach, and the loss is of such a nature that it was reasonably foreseeable by the parties or actually within their contemplation at the time the contract was entered into, then that loss may be recovered in an action for damages.” American Mechanical Corp. v. Union Machine Co. of Lynn, Inc., 21 Mass. App. Ct. 97, 101 (1985). “The actual sale of a piece of property normally provides strong evidence of market value, although the ‘evidentiary value of such sales in less than arms-length transactions is diminished.’” Id. at 100, quoting New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456, 469 (1981). Here, no sale occurred. Approximately one year after the date of the breach, the receiver of the foreclosing mortgagee bank forgave the mortgage of $186,838.46 in consideration of a deed from Mr. O’Malley. This type of transaction does not necessarily yield a price reflecting fair market value. See Chartrand v. Newton Trust Co., 296 Mass. 317 (1936). The trial judge apparently rejected the “Final Market Value Estimate” provided by the bank’s appraiser dated November 10, 1993, appraising the property at $260,000.00. No expert testified and no evidence was offered suggesting an acceptable approach to the valuation of the property. See Taunton Redevelopment Associates v. Board of Assessors of Taunton, 393 Mass. 293 (1984) re: capitalization of income approach. We find prejudicial error in the trial judge’s ruling that $186,838.46 represented the fair market value. We remand the case to the trial court on the issue of damages recoverable by O’Malley on account of the defendants’ breach. This reassessment of damages must include the appropriateness of including the legal bills incurred by O’Malley in filing his bankruptcy petition and the advertising costs extended in attempting to sell his property. By definition, consequential damages “... are those that cannot be reasonably prevented and arise naturally from the breach, or which are reasonably contemplated by the parties.” Delano Growers’ Co-op. Winery v. Supreme Wine Co., Inc., 393 Mass. 666, 679 (1985). However, they must not overcompensate the seller.
Fleet Bank’s claims. The trial court correctly determined that the defendants breached the conditions of the commitment letter and that Fleet Bank incurred $11,056.15 as reasonable costs and expenses, as represented by an environmental report, an appraisal, bank counsel fees and expenses, an origination fee and Attorney Innarelli’s attorney’s fees as Moghul’s attorney. In addition, he found the defendants’ action constituted a violation of chapter 93A and awarded an additional $5,547.88 in attorney’s fees. The factual findings, as supported by the evidence, amply satisfy the judge’s legal conclusion that the defendants’ conduct rose to the level of an unfair or deceptive act or practice. The trial judge found that although Dr. Moghul informed Attorney Innarelli thatTolba had his authorization to act on *290 his behalf in or about October, 1993, he nevertheless denied any knowledge of the intended sale on or about December 28,1993. The court further found that upon demand, the defendants failed and refused to pay the expenses. The defendants’ conduct reached that “level of rascality” giving rise to an action under Consumer Protection laws. Piccicuto v. Dwyer, 32 Mass. App. Ct. 137, 139 (1992). Therefore, with respect to the claim by Fleet Bank, we dismiss the appeal.

 The document read as follows: “NOW THEREFORE in consideration of the covenants contained herein, it is mutually agreed as follows: Assignor [Tolba] assigns its rights pursuant to the P+S Agreement and Judgment to Assignee [Moghul] and Assignee accepts the same.”