Williams, PJ.
The birth of a foal engendered this action regarding its ownership between the plaintiff, Louis Giuliano (“Giuliano”), who owned the foal’s sire, and the defendants Paul Yacca (‘Yacca”), who owned the foal’s dam and Rosalie Vacca (“Rosalie”).[1] The Vaccas were defaulted for failing to answer the complaint. Following a hearing on damages, the judge awarded Giuliano damages for the claimed fair market value of the foal as well as for the foal’s potential purse winnings. The judge also awarded Giuliano attorneys fees after finding that the Vac-cas had falsely asserted in affidavits that Rosalie had no ownership interest in the foal. The Vaccas appealed, arguing that the judge abused his discretion in denying their motion to set aside the default entered against them, and that the Statute of Frauds should have prevented entry of that default as a matter of law in any event. If the default judgment was properly entered, the Vaccas argue, then the judge *155 erred in his assessment of damages, and also improperly levied an attorney’s-fee sanction against them for perjury.
We conclude the judge did not abuse his discretion in denying the Vaccas’ motion to set aside the default and that the Statute of Frauds did not prevent the entry of default. We do, however, remand the case for a new hearing on damages, and we reverse the imposition of the attorney’s-fee sanction for the perceived “perjury.”
Claiming that the consideration for his stallion’s acting as stud to Vacca’s mare in April 1999 was not a standard stud-service fee, as the Vaccas claimed, but rather half-ownership in the resultant foal, Giuliano filed his complaint against the Vaccas on June 27,2001. The Vaccas’ then-counsel[2] delayed filing an answer while both counsel discussed settlement as well as the issue of the Vac-cas’ earlier-filed small-claims action against Giuliano. On July 30, 2001 counsel filed an assented-to motion extending the time to answer for a week, until August 7, 2001. The Vaccas did not file an answer by then. After that date, their counsel tried to reach Giuliano’s counsel “many times,” unsuccessfully, but still filed no answer. More than two months later, on October 9, 2001, Giuliano sought a default, which entered on October 15, 2001. One week later, on October 22, 2001, the Vaccas filed a motion to set aside the default under Mass. R. Civ. R, Rule 55(b), arguing “good cause” existed for setting aside the default. Giuliano opposed the motion, and on November 8, 2001, filed a motion for default judgment and assessment of damages. This motion was scheduled for hearing on November 26,2001, to be heard along with the Vaccas’ motion to set aside the default. On November 9, 2001 the Vaccas had filed a purported answer and counterclaim — which was apparently accepted for filing despite their having been in default for several weeks (and so must be considered a proposed answer only).
A motion hearing on several matters, including the default situation, began on November 27,2001 and was continued to December 3,2001. The judge denied the Vaccas’ motion to set aside the default.
The theme of the Vaccas’ motion to set aside the default was their then-counsel’s mea culpa to the effect that he “should have been more persistent” in resolving with Giuliano’s counsel two “threshold issues”: the Vaccas’ prior small-claims action against Giuliano (apparently dismissed for seeking equity relief outside small-claims jurisdiction) and the claimed “inappropriate joinder” of Rosalie, whom counsel argued should not be a defendant since she had no ownership interest in the foal. We infer there was no discussion between counsel on these or any other issues between August 7 and October 9, and the record reveals no correspondence between counsel during that time. No reason is proffered as to why those issues could not have been raised in an answer or by motion within that two-month period.
After the denial of the Vaccas’ motion to set aside the default against them, a damages hearing was held in May 2002, and a judgment entered against the Vac-cas for over $48,000.00, including attorney’s fees of $3,800.00 because the judge found the Vaccas “guilty” of “perjury.”
I. The Judge Did Not Err In Refusing To Set Aside The Vaccas’ Default And In Entering Default Judgment Against Them, Which Was Not Barred By Statute Of Frauds
The threshold issue is whether the judge abused his discretion, see, e.g., Riley v. Davidson Constr. Co., 381 Mass. 432, 441 (1980), in refusing to set aside the default against the Vaccas. A trial judge’s decision in allowing or denying a *156 motion to set aside a default is “not generally disturbed on appeal.” DeKarz v. V&V Roofing, Inc., 1998 Mass. App. Div. 21, 22. We do not disturb the denial here.
The Vaccas argue the judge abused his discretion in denying their motion because their then-counsel detailed the reasons for the delay in answering, and because they had meritorious defenses to Giuliano’s action. As to the first point, the Vaccas insist their then-counsel, despite repeated attempts, was unable to reach Giuliano “over a four-month period.” More critically, the Vac-cas essay no reason why during the two months they filed neither a motion to dismiss based on their perceived key defense issues nor an answer, and did not even move to enlarge time in which to file either. In order to set aside a default, a party must demonstrate a good reason to set aside the default as well as the existence of a meritorious defense. See, e.g., Clamp-All Corp. v. Foresta, 53 Mass. App. Ct. 795, 806 (2002). The Vaccas’ showing of good cause was less than persuasive.
The Vaccas’ second point centers on their claimed meritorious defense, that the Statute of Frauds provision of the Uniform Commercial Code, M.G.L.c. 106, §2-201 (1), should have barred Giuliano’s action as a matter of law because the subject transaction involved the sale of goods for $500.00 or more, which contract must be in writing.[3] This argument, however, runs counter to the Vac-cas’ major defensive theme: that the transaction between them and Giuliano was simply their paying Giuliano a standard flat fee for the stud services of his stallion. That theory of the case clearly involves no sale of goods so as to trigger the UCC’s statute-of-frauds provision, and would have made that purported defense inapplicable at all.
The further flaw in the Vaccas’ argument is that their motion to set aside and its supporting affidavit are silent as to the statute-of-frauds defense. The *157 defense appeared for the first time in the Vaccas’ proposed answer, filed nearly two weeks after the motion and affidavit, and apparently not made part of that two-part submission.[4] Demonstrating a “meritorious defense” to an action requires some factual showing, preferably by affidavit with some specifics; mere assertions or conclusions are insufficient. See New England Allbank for Sav. v. Rouleau, 28 Mass. App. Ct. 135, 140 (1989); Cicchese v. Tape Time Corp., 28 Mass. App. Ct. 72, 74-75 (1989); see also, e.g., Fleet Nat’l Bank v. Smith, 1999 Mass. App. Div. 163, 163-64. But the sole hint in the motion of a meritorious defense is the Vaccas’ suggestion that their being the first of the parties to seek judicial determination of the parties’ rights, by filing a small-claims action, “strongly suggests] the existence of meritorious defenses and claims” on his part. Even read generously, the affidavit of then-counsel touches on no potential defenses at all, but observes only that “[i]t is also possible that there are significant stakes in this case because it involves a race horse which may prove to be a winning trotter if permitted to race. ...” Though this statement raises “the potential for significant monetary recovery,” which is one mark of a case “ill-suited for the imposition of the harsh and disfavored sanction of default,” Continental Data Corp. v. Old Colony Group Leasing, Inc., 1993 Mass. App. Div. 44, 46, it does not approach conjuring the more vital ingredient of the meritorious defense itself.[5] Even if a meritorious defense were properly raised in such a motion as the Vaccas’, the judge was not required to exercise his discretion so as to set aside the default. See, e.g., Fleet Nat’l Bank, supra, at 164-65. Similarly, although the judge could have considered the statute-of-frauds defense raised in the proposed answer, he was not obliged to do so, especially since the issue had not been highlighted in the motion or affidavit. See Coady v. Stack, 1995 Mass. App. Div. 135, 137.
In sum, the Vaccas’ motion and its accompanying affidavit presented only a slender excuse for failing to answer and no demonstration of an apparently meritorious defense. The standard governing a decision whether to set aside a default is “good cause.” M. R. Civ. R, Rule 55(c); see, e.g., Broome v. Broome, 40 Mass. App. Ct. 148, 152 (1996); see also, e.g, Buffum v. Rockport, 36 Mass. App. *158 Ct. 377, 381 (1994),[6] Mindful that “a default... may be set aside for reasons that would not be enough to open a default judgment,” Broome, supra, at 152 (further citation omitted), and that “[wjhen satisfied of the good faith of the applicant moving to set aside a default, the court should be liberal in its consideration of the application,” Adoption of Eugene, 415 Mass. 431, 437 (1991) (further citation omitted), we review the judge’s decision for abuse of discretion. See, e.g, Britt v. Rosenberg, 40 Mass. App. Ct. 552, 553 (1996). “Abuse of discretion occurs when ‘its exercise has been characterized by arbitrary determination, capricious disposition, whimsical thinking or idiosyncratic choice.’” Carlson v. Silvia, 2002 Mass. App. Div. 190, 191 n.1 (further citation omitted).[7]
While it might be true that the default period was not prolonged, that it occurred before trial, and that Giuliano established no prejudice, the Yaccas set out no substantive reason why no answer was timely filed, and, more critically, set out no potential meritorious defense. In denying relief, the judge properly could consider: (1) the time the Yaccas had waited to answer (proposed answer filed two weeks after motion to set aside, which itself was filed more than two months after assented date to answer) and to respond to the entry of default (only one week), and (2) the Vaccas’ failure to file an affidavit asserting an adequate reason for the default and providing the meritorious nature of his defense. See Cicchese, supra, at 74-75 and cases cited; see also, e.g., Coady, 1995 Mass. App. Div. at 137. The judge justifiably concluded that the Vaccas had neither demonstrated good cause for failing to act timely nor effectively posited a potentially meritorious defense. E.g., National Grange Mut. Ins. Co., 27 Mass. App. Ct. at 157. We do not find that the judge’s apparent emphasis on these factors cannot, or should not, trump other factors that might have favored allowing the motion: the Vaccas’ counsel’s speedy action in seeking relief once default entered, and the fact that that speedy action, coupled with Giuliano’s counsel’s awareness that the Vaccas’ counsel intended to join suit, suggested a lack of substantial prejudice to Giuliano upon default removal. See, e.g., Continental Data Corp., supra, at 44-45; see also, e.g., Messier v. Kloc, 1992 Mass. App. Div. 15, 15-16. The judge’s denial of Vacca’s motion did not exhibit arbitrariness, caprice, whimsy, or idiosyncracy.
II. The Judge Erred In Calculating Damages
The hearing judge adopted Giuliano’s calculation and request for damages in the amount of $40,125.00.[8] That figure was derived from half the fair market value of the foal, which Giuliano testified was $40,000.00, or $20,000.00, plus half the foal’s expected race winnings of $50,000.00, or $20,000.00, less half the foal’s boarding costs, or $4,875.00. Such a formulation results in the award of duplicative damages since the fair market value of the horse, which would be determined by a *159 hypothetical sale, and her race winnings, realizable only upon continued ownership, are incompatible — indeed, mutually exclusive. Because an award for lost prospective earnings is marred by an insufficient factual foundation, we determine the only proper basis for an award a judge could derive from the evidence at the damages hearing was fair market value.[9] But because the evidence on fair market value at the damages hearings did not touch on “fair market value” as the contours of that measure are limned in our decisional law, we remand that aspect of the case for a further hearing consistent with our discussion.
A. The Judge Improperly Awarded Lost Prospective Profits In The Absence Of Adequate Supporting Evidence
Although the lost prospective profits of a racehorse may constitute a proper basis for a damage award, the likelihood of those profits must be proven by an “established earnings record” preferably supported by expert opinion. Rombola v. Cosindas, 351 Mass. 382, 385-86 (1966). The horse in Rombola had demonstrated her racing ability “over an extended period of time, against many competitors and under varying track conditions.” Id., at 385. She had displayed a “consistent performance” in the year following the breach. Id. By contrast, the foal here had no record at all. Thus lost prospective profits were not an appropriate element of damages to consider here. Although because lost profits are “notoriously difficult to prove with precision” a plaintiff is not required to prove them with mathematical accuracy, they must be proved in that somewhat misty context to a reasonable degree of certainty. Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 438 Mass. 387, 413 (2003) and cases cited; Rombola, supra, at 385. And though some uncertainty is permitted in calculating such damages and thus an award may stand on “less than substantial” evidence, Herbert A. Sullivan, supra, at 413, forecasting this foal’s potential earnings in the absence of any track record must be held to constitute impermissible speculation. That aspect of the award may not stand, and we reverse the award of damages to Giuliano for lost prospective winnings.
B. The Judge Improperly Awarded Fair Market Value Damages In The Absence Of Adequate Supporting Evidence
The chief theme of Giuliano’s damages evidence was “fair market value.” Giuliano testified the fair market value of a racehorse is gauged by two factors: its “confirmation,” that is, “how the horse stands,” and its bloodlines. The value of a horse in the world of harness racing might properly be assessed by those qualities, but that is not the law of this Commonwealth. We recognize that determining the fair market value of a racehorse might be difficult, see Callahan v. Rafail, 2001 Del. Super. LEXIS 88 (2001), citing LeBlanc v. Underwriters at Lloyd’s, London, 402 S.2d 292, 299 (La. App. 1981), and that that difficulty grows when one seeks to set the fair market value of a horse that has never raced. We recognize, too, that a judge has some discretion in allowing some flexibility in expert testimony when “special conditions” exist. See Lattuca v. Robsham, 442 Mass. 205, 216 (2004). No such conditions were recognized here. Even besides the lost-earnings measure, there might also have been other ways to estimate the value of this animal. But the measure sought to be proved at the damages hearing was expressly “fair market value,” and this Court must conclude that the “fair market value” of a racehorse is determinable the same way it is for any other commodity. Fair market value is “that price likely to be arrived at by a willing seller under no compulsion to sell and an informed purchaser.” Meyer v. Wag *160 ner, 57 Mass. App. Ct. 494, 501-02 (2003).[10] That Giuliano, and the Vaccas, could have produced testimony at the hearing, other than their own, regarding prices this foal could reasonably have expected to command from a willing buyer does not seem unreasonable.
Instead of such evidence, the judge heard Giuliano’s opinion as to the foal’s fair market value based not upon the price a hypothetical buyer would have paid for her, but rather upon her “confirmation” and assumed projected racing earnings, based upon the racing success of her sire, that of her dam’s sire, and that of her “brother.” Although such factors might well fuel an opinion of what a buyer would pay for a horse, they cannot serve as the sole underpinning of an opinion of fair market value for a horse. And if projected lost earnings in the absence of an “established earnings record” for the animal itself cannot properly serve as a measure of damages, see Rombola, supra, at 385-86, allowing that factor to serve as the basis for an opinion — especially one from an interested party — of fair market value would be anomalous.
Valuation is a question of fact we would not disturb in the absence of clear error, Lattuca, supra, at 216, and an award of damages must stand unless making the award constituted an abuse of discretion amounting to an error of law. Gray v. Kieger, 27 Mass. App. Ct. 583, 589 (1989). Under either standard — clearly erroneous or abuse of discretion — the award here on fair-market-value damages cannot stand because it was based on virtually no foundational evidence appropriate for that measure of damages. We are left with a definite and firm conviction that a mistake has been committed, e.g., Heavey v. Board of Appeals of Chatham, 58 Mass. App. Ct. 401, 405 n.6 (2003) and we remand the case for a new hearing on damages.
C. The Judge’s Imposition Of An Attorney’s-Fee Sanction Was An Abuse Of Discretion
In addition to the damages awarded for the foal itself, the judge awarded Giuliano an attorney’s fee as a sanction for what the judge found to be “guiltf] of perjury” on the part of the Vaccas. The inappropriateness of that sanction, and the lack of foundation for the amount found in any event, compel us to reverse that award.
In support of motions to dissolve a trustee-process attachment and to set aside the default against them, the Vaccas filed affidavits averring that Rosalie had no ownership interest in the foal. Giuliano, having obtained records from the United States Trotting Association (“USTA”) indicating Vacca had applied for a transfer of registration for the foal from himself to himself and Rosalie, characterized that writing as “document[ing] the transfer of the foal into the joint ownership of [Vacca and Rosalie],” and thus suggested the Vaccas had lied in their affidavits. The Vaccas countered with an affidavit from Robert Luehrman (“Luehrman”), the Registrar of the USTA. Among other averments, Luehrman concluded that the application for transfer relates to registration of a horse with the USTA for the purposes of administering USTA registration regulations, and “does not constitute a transfer of legal ownership.” He also concluded in his affidavit that “Mr. Vacca was the sole registered owner of the mare ... and was therefore the sole owner of the foal.”
Although a court might not find the Luehrman affidavit conclusive on the own *161 ership issue, it cannot be gainsaid that the observations of this authoritative and apparently disinterested witness deserved some consideration. One could have assigned more weight to the interpretation of the Registrar of the USTA regarding the import of the application than to Giuliano’s, even disregarding Giuliano’s interest in the matter. On the other hand, a court could put aside Luehrman’s affidavit and legitimately choose Giuliano’s view on the ownership issue over the Vaccas’. But to transform the disputed factual underpinnings of the ownership dispute into a finding of “guilt” of “peijury” — not even contempt, but perjury, see, e.g., Miaskiewicz v. Commonwealth, 380 Mass. 153, 157-58 (1980) —seems unjustifiably harsh, and is unwarranted.
Even were we to assume the falsity of the Vaccas’ affidavits as to the ownership issue, we have found no authority, and been provided none, that an appropriate sanction on discovering perceived “perjury” would be to levy an attorney’s fee against the purported “perjurers,” especially when the record reveals no foundation for the amount of such fees assessed. See Reznik v. Friswell, 2003 Mass. App. Div. 89, 91. “Rather, the customary remedy for false testimony is criminal prosecution for perjury or punishment for contempt.” Id., citing Ezekiel v. Jones Afotor Co., 374 Mass. 382, 387 (1978). “Punishment” for contempt would presumably come in the context of a criminal-contempt proceeding, which was not initiated here. The judge invoked no contempt powers, and considered the imposition of an attorney’s fee as a sanction only, and not as punishment for contempt.[11] Because the remedy for perceived perjury is either criminal prosecution or the initiation of criminal contempt proceedings, Reznik, supra, the judge’s attorney’s-fee sanction here is without apparent precedent. Even were such a sanction permissible as a remedy for “guilt” of “perjury,” it must seemingly apply in the context of deeming the “perjury” conduct that flouted the authority of the court or that obstructed the orderly course of a legal proceeding. See Avelino-Wright v. Wright, 51 Mass. App. Ct. 1, 5 (2001).[12] The purpose of such a sanction as an attorney’s-fee award, however, unlike the use of the criminal-contempt power, is not only to punish the offending party but also to compensate the aggrieved litigant for actual loss occasioned by the offending party’s misconduct. Id., at 5. “Any monetary award, however, should be tailored to the resources wasted or unnecessarily expended as a result of the misconduct.” Id., citing Commonwealth v. Rogers, 46 Mass. App. Ct. 109, 113 (1999). No such tailoring was apparent here.
We find, then, that evidence of “peijury” on the part of the Vaccas was scant if not absent, that the award of an attorney’s-fee sanction for such conduct even had it occurred would be inappropriate, and that even were such a sanction permissi *162 ble, it would have to be tailored to the actual loss suffered by the opposing party. We reverse the award of the attorney’s fee.
In summary, we dismiss the appeal insofar as it challenges the propriety of the judge’s denial of the Vaccas’ motion to set aside the default against them. We reverse the award of damages to Giuliano for lost prospective profits and the award of an attorney’s-fee sanction. We remand to the trial judge the issue of the award of damages to Giuliano for the fair market value of the foal, to be determined in accordance with our discussion.
So ordered.

 We use Ms. Vacca’s first name not disrespectfully, but only to distinguish her from her husband.

 Appellate counsel was not the Vaccas’ counsel during the proceeding below.

 The UCC subsection provides in pertinent part: “Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought....” That the foal, even unborn, would be “goods,” see M.G.L.c. 106, §2-105(1) (“‘[gjoods’ also includes the unborn young of animals...”), is plain. But at the time of the transaction here, there was no foal at all, even an unborn one. There was only the anticipation that a foal would result from the stud service. And even had an unborn foal existed then, whether Giuliano’s claim of joint ownership with Vacca of such an unborn animal translated into a “sale” under the Code is questionable at best. “A ‘sale’ consists in the passing of title from the seller to the buyer for a price.” Id.., §2-106(1). Since Giuliano claimed that the consideration for the stud services was half ownership of the expected foal, whether there was a “seller,” a “buyer,” and a “price” even under Giuliano’s view of the case is not self-evident. Indeed, Giuliano’s claim is essentially that he and the Vaccas were co-venturers in the ownership of the foal. Under such a view, which the motion judge adopted here, the Statute of Frauds would be inapplicable. See First Pennsylvania Mortgage Trust v. Dorchester Sav. Bk., 395 Mass. 614, 625 (1985). (More to the point, as noted in the text above, under the Vaccas’ view of the case, there obviously was no “sale” of “goods.”) Although the modern trend is to interpret statutes of frauds liberally, e.g., Cantell v. Hill Holliday Connors Cosmopulos, Inc., 55 Mass. App. Ct. 550, 552 & n.2 (2002), stretching an interpretation to cover the situation here would likely not have been warranted even had the defense been properly presented to, and been considered by, the judge.

 Because upon entry of default only the factual allegations, and not the concomitant conclusions of law, of a complaint are accepted as true, and a default judgment cannot enter when the complaint fails to state a cause of action, see, e.g., Marshall v. Stratus Pharmaceuticals, Inc., 51 Mass. App. Ct. 667, 673 (2001), the trial judge remains obligated to determine whether default judgment is appropriate. E.g., DeKarz, supra, at 22; see also, e.g., Salloway v. Wood, 1994 Mass. App. Div. 219, 223 and cases cited. Although the Vac-cas argue that the statute-of-frauds aspect of the UCC prevented the entry of judgment against them as a matter of law, the Statute of Frauds is an affirmative defense that must be specially pleaded. M. R. Civ. R, Rule 8(c); see, e.g., Hubbard v. Peairs, 24 Mass. App. Ct. 372, 379 (1987). Failure to plead it results in the court’s refusal to consider its effect. E.g., Hebshie v. Recchiati, 2002 Mass. App. Div. 88, 89, citing, inter alia, Gentile Bros. v. Rowena Homes, Inc., 352 Mass. 584, 590 (1967). The judge here was not obliged to consider the Statute of Frauds since the Vaccas failed to file a timely answer at all, and we are provided no authority to the effect he was required to consider the merits of a potential defense, especially when that defense was not emphasized in other submissions and when it does not seem to fit either party’s view of the transaction.

 Although some aspects of this case bear surface resemblance to some of Continental Data Corp., the moving party there, unlike here, made an “effective demonstration of a meritorious defense.” Continental Data Corp., supra, at 46.

 The critical distinction between a default and a default judgment on appeal is that a motion to set aside a default is subject to the “good cause standard” of Rule 55(c) rather than the more stringent “excusable neglect” of Rule 60(b). See, e.g., National Grange Mut. Ins. Co. v. Walsh, 27 Mass. App. Ct. 155, 156 n.2 (1989); MVP, Inc. v. Department of Revenue, 26 Mass. App. Ct. 932, 932-33 (1988); Kenney v. Rust, 17 Mass. App. Ct. 699, 702 n.5 (1984).

 See also, e.g., Boston Univ. v. Walker, 2001 Mass. App. Div. 227, 228 (“‘Only where a question ordinarily discretionary is so clear that discretion is superseded by imperative legal duty can the result be revised.’”) (citation omitted)

 The actual final judgment, after the addition of interest, costs, and attorney’s fees, was in the amount of $48,711.49. Of that sum, $3,800.00 represented an attorney’s fee imposed as a sanction because of the Vaccas’ purportedly perjured affidavits. We treat the issue of that fee separately below.

 We note, too, that ordinarily findings of fact are required in damages proceedings following default. See, e.g., Bissanti Design/Build Group v. McClay, 32 Mass. App. Ct. 469, 472 (1992), citing Kenney v. Rust, 17 Mass. App. Ct. 699, 705 (1984). There were no such findings made here.

 Another description of “fair market value” is “the highest price which a hypothetical willing buyer would pay to a hypothetical willing seller in an assumed free and open market.” O’Malley v. Moghul, 1999 Mass. App. Div. 286, 289 (further citation omitted); see also, e.g., Lattuca, supra, at 215, quoting Delta Materials Corp. v. Bagdon, 43 Mass. App. Ct. 307, 309 (1997).

 Giuliano sought in his motion an attorney’s-fee sanction, but the record, which refers to a “bill” — which itself does not appear in the record — does not demonstrate he submitted any materials at all to support such an award. See, e.g., Robbins v. Robbins, 19 Mass. App. Ct. 538, 541-42 (1985) (judges have considerable discretion in determining attorney’s-fee awards, but findings allowing them must be adequately supported by evidence and should have some detail and analysis supporting conclusion); cf. Kennedy v. Kennedy, 400 Mass. 272, 275 (1987). A judge may properly award attorney’s fees without a hearing if the record facially substantiates the fees awarded and the parties are afforded the opportunity to argue the issue. Ross v. Ross, 385 Mass. 30, 38 (1982). Here, though, there seems to have been a bare request for fees without any specific figure even suggested, resulting in an award of fees with no foundation at all.

 The judge indicated in a memorandum that the Vaccas made their false statements knowingly “with the intent to influence the decision of the Court on matters material to the litigation now pending....”