448 Mass. 57 (2006)                                                      57

Simmons v. Clerk-Magistrate of the Boston Division of the Housing Court Department.

CHERYL SIMMONS & another[1] *vs.* CLERK-MAGISTRATE OF THE
BOSTON DIVISION OF THE HOUSING COURT DEPARTMENT
& others.[2]

Suffolk. November 7, 2006. - December 19, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Boston Housing Authority. Housing Authority. Mandamus. Practice, Civil,* Ac-
tion in nature of mandamus. *Housing Court,* Costs and fees. *Supreme
Judicial Court,* Superintendence of inferior courts. *Statute,* Construction.
*Words,* "Political subdivision of Commonwealth."

In a civil action challenging certain practices of the Housing Court Depart-
ment in assessing certain entry fees and surcharges against the Boston
Housing Authority (BHA) in civil actions it filed, and the BHA's practice
of passing along those fees as costs to public housing residents who were
defendants in those actions, the plaintiffs were not entitled to relief in the
nature of mandamus because they had an adequate and effective remedy,
namely, an appeal from the assessment of those fees and surcharges by the
Housing Court Department and, subsequently, by the BHA. [59-61]
Utilizing its general superintendence powers under G. L. c. 211, § 3, to
determine the legality of certain practices of the Housing Court Depart-
ment as a systemic concern warranting resolution [61-62], this court
concluded that the Boston Housing Authority is not a political subdivision
of the Commonwealth for purposes of G. L. c. 185C, § 19, and therefore
must pay entry fees and surcharges when filing actions in the Housing
Court Department. [62-65]

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on December 27, 2005.

The case was reported by *Spina,* J.

*James M. McCreight* for the plaintiffs.

*Jay S. Koplove* (*Wilbur E. Commodore* with him) for the
Boston Housing Authority.

*Peter Sacks,* Assistant Attorney General, for Clerk-Magistrate
of the Boston Division of the Housing Court Department.

---

[1]Willie Mae McLaughlin.
[2]Boston Housing Authority (BHA) and the administrator of the BHA.

SPINA, J. The plaintiffs, tenants in public housing owned and operated by the Boston Housing Authority (BHA), filed a complaint seeking relief in the nature of mandamus, pursuant to G. L. c. 249, § 5, in the Supreme Judicial Court for Suffolk County, challenging the practice of the Housing Court Department of assessing entry fees and surcharges in civil actions filed by the BHA, and the practice of the BHA of passing along such fees and surcharges as costs to public housing residents who are defendants in actions brought by the BHA. A single justice reserved and reported the matter, without decision, to the full court. For the reasons that follow, we conclude that the BHA is not a political subdivision of the Commonwealth and, therefore, must pay entry fees and surcharges when filing actions in the Housing Court Department.

1. *Background.* We first summarize the facts, taken from the pleadings and the parties' joint statement of agreed facts submitted to the single justice. The BHA administers over 10,000 units of public housing in Boston. Each year, the BHA files in the Boston Division of the Housing Court Department hundreds of summary process and other civil actions against its residential tenants; a substantial number of these actions involve nonpayment of rent. When the BHA is the prevailing party, it seeks to recover from its tenants, pursuant to its standard public housing lease[3] and applicable law, the costs that the BHA has incurred in pursuing its claims.

In accordance with G. L. c. 185C, § 19, clerks of the Housing Court Department charge "a fee of $120 for the entry of an action . . . which shall be paid by the party entering or filing the same." General Laws c. 262, § 4C, further provides that "[a]ny party entering a complaint, petition or other civil action in any court of the commonwealth, except small claims cases, in which an initial filing fee is payable . . . shall pay to the clerk of said court a surcharge of $15 in addition to the fee

---

[3]Since April, 2000, the BHA has used a standard residential lease for all of its public housing tenants. Section 12 of the lease provides: "All legal costs, fees and charges authorized by law and actually incurred by BHA in connection with any court action brought against Resident will be charged to Resident, and Resident hereby agrees to pay the same if the BHA prevails in court. Legal costs, fees, and charges shall include all court costs, and other expenses incident to the court action."

otherwise required by this chapter." Finally, pursuant to G. L. c. 262, § 4B, the Housing Court Department charges a fee of five dollars for each blank summons.[4]

For twenty-five years, the clerk-magistrate of the Boston Division of the Housing Court Department did not charge the BHA entry fees and surcharges for civil actions filed by the BHA against its public housing tenants. However, in a letter dated June 23, 2003, the Chief Justice of the Housing Court Department informed the administrator of the BHA that, effective July 1, 2003, the clerk's office would no longer accept the filing of any case from the BHA without the payment of fees in accordance with G. L. c. 185C, § 19. He pointed out that all the other divisions of the Housing Court Department charged their local housing authorities the same fees that were assessed to other landlords. In response, the general counsel for the BHA informed the Chief Justice that the BHA was a "political subdivision" of the Commonwealth within the meaning of G. L. c. 185C, § 19, and, therefore, was exempt from paying entry fees and surcharges. The Chief Justice disagreed and, as of July 1, 2003, the clerk-magistrate began to charge the BHA a minimum of $140 for each civil action filed in the Housing Court Department. The BHA has paid these entry fees and surcharges, but it has endorsed each check as having been paid under protest and without the waiver of any rights.

The BHA sent a written notice to its public housing tenants informing them that the Boston Division of the Housing Court Department had started to require the payment of entry fees in eviction and other housing-related cases. The letter stated that if the BHA prevailed in such actions, then the residents would be liable for reimbursing the BHA for its costs. In October, 2005, the BHA filed nonpayment summary process actions against the plaintiffs in the Boston Division of the Housing Court Department. With respect to each plaintiff, the BHA has entered into a "stipulation of dismissal with reservation as to costs," pending the resolution of the present action.

2. *Mandamus.* A complaint in the nature of mandamus is "a

---

[4]Separate and apart from the entry fees and surcharges imposed by the Housing Court Department, the BHA must pay a service fee of twenty-three dollars to its process server for each complaint served.

call to a government official to perform a clear cut duty," and the remedy is limited to requiring action on the part of the government official. *Doe* v. *District Attorney for the Plymouth Dist.*, 29 Mass. App. Ct. 671, 675 (1991). See *Lutheran Serv. Ass'n of New England, Inc.* v. *Metropolitan Dist. Comm'n*, 397 Mass. 341, 344 (1986) (mandamus action "is appropriate to compel a public official to perform an act which the official has a legal duty to perform"). It is well established that "relief in the nature of mandamus is an extraordinary remedy which will be granted only when there exists no other adequate and effective remedy." *L.G.G.* v. *Department of Social Servs.*, 429 Mass. 1008, 1008 (1999). See *Callahan* v. *Superior Court*, 410 Mass. 1001 (1991); *Lutheran Serv. Ass'n of New England, Inc.* v. *Metropolitan Dist. Comm'n, supra*. Here, the plaintiffs are not entitled to relief in the nature of mandamus because they have an adequate and effective remedy, namely, an appeal from the assessment of entry fees and surcharges by the Housing Court Department and, subsequently, by the BHA.

Although the plaintiffs have sought relief under G. L. c. 249, § 5, our consideration of the substance of their complaint dictates, more appropriately, that we review the Housing Court Department's practice of assessing entry fees and surcharges in civil actions filed by the BHA pursuant to our authority under G. L. c. 211, § 3. Cf. *Commonwealth* v. *Hayes*, 372 Mass. 505, 507 (1977), quoting *Lataille* v. *District Court of E. Hampden*, 366 Mass. 525, 527 n.2 (1974) (addressing "substantive legal arguments underlying the petition [which] are the same whether the writ [is] considered one in certiorari, mandamus or invocation of supervisory powers"). As provided in G. L. c. 211, § 3, "[t]he supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided . . . ." While this court's supervisory powers under G. L. c. 211, § 3, "are by nature extraordinary, in an appropriate case this court could and should act at whatever stage in the proceedings it becomes necessary to protect substantive rights. That an appeal may lie from a final judgment does not prevent the court from taking such action as it may deem necessary." *Barber* v. *Commonwealth*, 353 Mass. 236, 239 (1967). See *Carr*

v. *Howard*, 426 Mass. 514, 517 n.3 (1998); *Purcell* v. *District Attorney for the Suffolk Dist.*, 424 Mass. 109, 111 (1997).

General Laws c. 211, § 3, further provides that "the justices of the supreme judicial court shall also have general superintendence of the administration of all courts of inferior jurisdiction . . . and . . . may issue such writs, summonses[,] . . . orders, directions and rules as may be necessary or desirable for the furtherance of justice, the regular execution of the laws, the improvement of the administration of such courts, and the securing of their proper and efficient administration." Where, as here, a systemic issue affecting the proper administration of the judiciary has been presented, resolution of the issue by this court is appropriate and "should not await some fortuitous opportunity of report or ordinary appeal." *A Juvenile* v. *Commonwealth (No. 1)*, 380 Mass. 552, 556 (1980) (resolving question of proper transfer practice between Boston Juvenile Court and Superior Court). See *County Comm'rs of Bristol* v. *Judges of Probate of Bristol County*, 338 Mass. 738, 741-742 (1959) (reviewing on its own motion controversy between two courts as to right to occupy particular court room). In the past, we have exercised our general superintendence powers to resolve, inter alia, "important issues with implications for the effective administration of justice" and "matter[s] of public interest that may cause further uncertainty within the courts." *First Justice of the Bristol Div. of the Juvenile Court Dep't* v. *Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't*, 438 Mass. 387, 391 (2003) (resolving internal dispute between members of judicial department). See *Bradford* v. *Knights*, 427 Mass. 748, 750-751 (1998) (determining that judges of Boston Municipal Court Department have inherent authority to rehear denials of applications for criminal complaints by clerks of that court).

The BHA files hundreds of summary process and other civil actions each year in the Boston Division of the Housing Court Department against its public housing tenants. Notwithstanding the fact that all the other divisions of the Housing Court Department require the payment of entry fees and surcharges from their local housing authorities,[5] the BHA has claimed that it should continue to be exempt, as a political subdivision of the Com-

---

[5]The Housing Court Department is comprised of a western division, a divi-

monwealth, from such payments, which represent a significant expense for the BHA. The Housing Court Department's practice of assessing entry fees and surcharges in civil actions filed by the BHA is an important issue with implications for the effective administration of justice, is an issue that needs comprehensive clarification, and is a matter of significant public interest to the multitude of public housing tenants, and those who provide them housing, in Boston. Accordingly, we conclude that the legality of this practice by the Housing Court Department is a systemic concern that this court should resolve through the exercise of its general superintendence powers under G. L. c. 211, § 3.

3. *Imposition of entry fees and surcharges.* The plaintiffs contend that the BHA is a "political subdivision" of the Commonwealth and, therefore, is exempt from the payment of entry fees and surcharges under G. L. c. 185C, § 19, for actions commenced in the Boston Division of the Housing Court Department. As a consequence, they continue, there are no such fees for the BHA to pass along as costs to public housing tenants. We disagree.

General Laws c. 185C, § 19, states that "[c]lerks of the housing court department shall charge a fee of $120 for the entry of an action . . . which shall be paid by the party entering or filing the same . . . ." However, certain entities are exempt from this requirement. "[N]o fee for the entry of an action . . . shall be charged to the commonwealth or political subdivision thereof." G. L. c. 185C, § 19. Significantly, there is no language in G. L. c. 185C, § 19, suggesting that a housing authority falls within this exemption as a "political subdivision" of the Commonwealth.

The BHA was created pursuant to G. L. c. 121B, § 3, inserted by St. 1969, c. 751, § 1. Under this legislative enactment, a housing authority is defined simply as "a public body politic and corporate." G. L. c. 121B, § 3. See G. L. c. 121B, § 1. Nothing in this definition indicates that the BHA should be treated as a "political subdivision" of the Commonwealth. Contrast G. L. c. 161A, § 2 (Massachusetts Bay Transportation Authority is "a body politic and corporate, and a political

sion for Worcester County, a northeastern division, a southeastern division, and a division for the city of Boston. See G. L. c. 185C, § 1.

subdivision of the commonwealth"); G. L. c. 161B, § 2 (each regional transit authority, as specified, may become "a body politic and corporate and a political subdivision of the commonwealth"); St. 1977, c. 436, § 3 (Boston Water and Sewer Commission created as "a body politic and corporate and political subdivision of the commonwealth"). Therefore, absent statutory language to that effect, we will not infer that a housing authority is a political subdivision for purposes of G. L. c. 185C, § 19. See *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999), and cases cited (court will not add words to statute that Legislature did not put there).

In support of their position, the plaintiffs rely heavily on G. L. c. 121B, § 17, the statute governing the indebtedness of housing authorities. It provides, in relevant part: "No bond, note or other evidence of indebtedness executed or obligation or liability incurred by an *operating agency* shall be a debt or charge against the commonwealth or *any political subdivision thereof other than such agency*" (emphasis added). The plaintiffs point to the fact that G. L. c. 121B, § 1, defines an "[o]perating agency" as "a housing authority or redevelopment authority," and the fact that G. L. c. 121B, § 17, refers to an "operating agency" as a "political subdivision" as proof that a housing authority is comprehensively understood to be a political subdivision of the Commonwealth. The plaintiffs' construction of G. L. c. 121B, § 17, is too broad.

While a housing authority may be considered a political subdivision for purposes of a particular statute like G. L. c. 121B, § 17, where it is specifically defined as such, a definition in one legislative enactment does not have universal application to all Massachusetts statutes. If that were the case, as correctly pointed out by the clerk-magistrate, the Legislature would not have deemed it necessary expressly to indicate in other statutes that a housing authority is encompassed within the term "political subdivision" for purposes of those other statutes.[6] See, e.g., G. L. c. 25A, § 11 (commissioner of energy resources shall establish energy audit program for buildings and

---

[6]With respect to the powers of a housing authority, G. L. c. 121B, § 26 (*m*), provides that certain bonds, notes, and securities "shall not create or imply any obligation or indebtedness of any kind on the part of any local housing

facilities owned by "public authorities and other public instrumentalities of the commonwealth and of its political subdivisions including, but not limited to, housing authorities"); G. L. c. 32, § 1 (definition of "[p]olitical subdivision" for purposes of contributory retirement system for public employees includes "housing authority"); G. L. c. 62E, § 3 (Commissioner of Revenue shall implement and operate system for "verifying financial eligibility of a participant in an entitlement program of the commonwealth or any political subdivision thereof or their respective agencies, including . . . a local housing authority"); G. L. c. 260, § 2D (action to recover asbestos-related costs brought by "any county, city, town, regional school district, housing authority or the commonwealth or any other political subdivision thereof" shall be commenced within six-year period). It simply would have been understood as such. Moreover, the Legislature has indicated that, for purposes of some particular statutes, a housing authority is distinguishable from a "political subdivision." See, e.g., G. L. c. 30, § 39M (*a*) (certain construction contracts "by the commonwealth, or political subdivision thereof, or by any county, city, town, district, or housing authority" shall be awarded to lowest bidder); G. L. c. 121A, § 11 (urban redevelopment corporation shall have power to transfer certain interests in land to "a housing authority, redevelopment authority, or the commonwealth or any of its political subdivisions, agencies or instrumentalities").

"The object of all statutory construction is to ascertain the true intent of the Legislature from the words used." *Lehan* v. *North Main St. Garage*, 312 Mass. 547, 550 (1942). We will not add words to a specific statute that the Legislature did not put there, either by inadvertent omission or by design. See *General Elec. Co.* v. *Department of Envtl. Protection, supra;*

authority, the commonwealth, or any political subdivision thereof." If, according to the plaintiffs' construction of G. L. c. 121B, § 17, a housing authority is universally considered to be a political subdivision, then this specific reference in G. L. c. 121B, § 26 (*m*), to a local housing authority would be superfluous. The statutory reference to "any political subdivision" of the Commonwealth would have encompassed a housing authority. Moreover, the language of G. L. c. 121B, § 26 (*m*), suggests that a local housing authority is *not* synonymous with a political subdivision because the statute does *not* refer to "any local housing authority, the commonwealth, or any [*other*] political subdivision thereof," as is the case with G. L. c. 121B, § 17.

*Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 8-9 (1998). Moreover, where the Legislature has employed specific language in one portion of a statute, but not in another, the language will not be implied where it is absent. See *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982); *First Nat'l Bank* v. *Judge Baker Guidance Ctr.*, 13 Mass. App. Ct. 144, 153 (1982). Here, we are not persuaded that the Legislature intended for the BHA to be considered a political subdivision of the Commonwealth for purposes of G. L. c. 185C, § 19.

4. *Conclusion.* The BHA is not exempt from the payment of entry fees and surcharges to the Housing Court Department on the filing of any action against its public housing tenants, and if the BHA prevails in any such action, those costs can be passed along to tenants as set forth in their standard residential leases. The treatment of local housing authorities in all divisions of the Housing Court Department will now be uniform. This case is remanded to the single justice for further proceedings and for the entry of a suitable judgment in the county court in accordance with this opinion.[7]

*So ordered.*

---

[7]In his answer to the plaintiffs' complaint, the clerk-magistrate asserted, as an affirmative defense, that the plaintiffs lacked standing to raise their claims. In his brief before this court, the clerk-magistrate acknowledges that the plaintiffs would have standing to challenge the BHA's actual assessment of entry fees and surcharges to them.