Williams, RJ.
However vigorously moral philosophers and others might debate the topic of the cost of admission to the Elysian Fields that is Fenway Park, whether by direct purchase from the Boston Red Sox or through “ticket scalpers,”[1] this case addresses but one aspect of the “Anti-Scalping Statute,” G.Lc. 140, §185D.[2] The defendant, Admit One Ticket Agency, LLC (“Admit One”), has appealed the judgment against it following a bench trial in which the plaintiff, Colman M. Herman (“Herman”), prevailed on his G.L.c. 93A action against Admit One for having quoted him allegedly exorbitant prices for tickets to certain Red Sox baseball games. Herman claims that the quotes violated G.L.c. 140, §185D and, thus, G.L.c. 93A. Admit One’s consistent position has been that Herman lacks standing in this action because he did not buy a ticket, and that a ticket sale is required for §185D to be operative. We agree, and reverse the trial court’s judgment in favor of Herman.
Admit One has been a licensed ticket reseller since 2000, and has advertised itself as the “largest Red Sox ticket agency nationwide.” In 2005, it bought from an *126 unknown source 1,128 Red Sox tickets for resale. In late May, 2005, Herman entered Admit One’s Weymouth store[3] and requested price quotes for loge-section seats for a series of July games between the Red Sox and the New York Yankees, and for a series between the Red Sox and the Baltimore Orioles in late May and early June. He was told that such seats for the Yankees games cost $500.00, and those for the Orioles games, $165.00. Herman asked what the face value of the tickets was, and was told “about $85.” He asked about no other tickets, bought nothing, and left the store. On June 7,2005, Herman sent a G.L.C. 93A demand letter to Admit One’s principal, claiming that “the prices quoted to me were exorbitant” and that Admit One had thereby violated G.L.C. 140, §185D and 940 CMR 3.16, and thus G.L.c. 93A Admit One responded by denying any such violations and observing that Herman had no standing to seek any redress against Admit One. This action followed.
“Standing” is an issue of subject matter jurisdiction. Statewide Towing Ass'n, Inc. v. Lowell, 68 Mass. App. Ct. 791, 794 (2007). Admit One challenged Herman’s standing in a motion to dismiss, a motion for summary judgment, and at trial. Although a determination of standing involves exploring such notions as “injury within the area of concern;”[4] “definite interest in the matters in contention;” and “violation of duty owed” — which are “elastic concepts that have different meanings for different parties” —
[i]n the final analysis, we must decide whether standing exists by examining several considerations, including the language of the statute in issue; the Legislature’s intent and purpose in enacting the statute; the nature of the administrative scheme; decisions on standing; any adverse effects that might occur, if standing is recognized; and the availability of other, more definite, remedies to the plaintiffs. In making our inquiry, we pay special attention to the requirement that standing usually is not present unless the governmental official or agency can be found to owe a duty directly to the plaintiffs.
Higby/Fulton Vineyard, LLC v. Board of Health of Tisbury, 70 Mass. App. Ct. 848, 850-851 (2007), quoting Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 135-136 (2000).
Mindful of such factors, we note that the plain language of §185D prohibits licensees such as Admit One from reselling tickets at prices set otherwise than as delineated in the statute.[5] “The word ‘sale’[— and by extension, ‘resale’ —] has a well defined meaning. It is the transfer of property from one person to another for a consid *127 eration of value” (emphasis added). Fisher v. Fisher, 23 Mass. App. Ct. 205, 206 (1986), quoting Arnold v. North American Chem. Co., 232 Mass. 196, 199 (1919). See also Giuliano v. Vacca, 2004 Mass. App. Div. 154, 156 n.3, quoting G.Lc. 106, §2-106(1) (“A ‘sale’ consists in the passing of title from the seller to the buyer for a price.”). While we accept the trial court’s finding that Herman bought neither a Yankees, nor an Orioles, ticket because “he was unable to afford the price offered by” Admit One, the fact remains that no sale, or resale, occurred. There was only, as the trial court found, an offer to sell. Section 185D is simply not triggered by some action, behavior, or status, such as being in the business of offering tickets for sale, other than an actual sale. See Commonwealth v. Sovrensky, 269 Mass. 460 (1929).[6] See also Roberts v. Enterprise Rent-A-Car Co. of Boston, Inc., 445 Mass. 811, 814 (2006) (“[The plaintiff] is claiming a G.L.c. 93A violation with respect to a product he did not even purchase. His pursuit of such a clam violates the principle that G.L.c. 93A, §9, does not authorize purely vicarious suits by self-constituted private attorneys-general” [quotations omitted]).
The “Anti-Scalping Statute” has been in place since 1924 with few amendments. See Opinion of the Justices, supra at 590; 7 Op. Atty. Gen. 564-566 (1924). Had the Legislature intended §185D to apply to offers for sale or resale, it could easily, and quite naturally, have so provided. “We will not add words to a specific statute that the Legislature did not put there, either by inadvertent omission or by design.” Taylor v. Board of Appeals of Lexington, 451 Mass. 270, 279 n.12 (2008), quoting Simmons v. Clerk-Magistrate of the Boston Div. of the Hous. Court Dep’t, 448 Mass. 57, 64 (2006). See also Bulger v. Contributory Retirement Appeal Bd., 447 Mass. 651, 661 (2006), quoting Commissioner of Revenue v. Cargill, Inc., 429 Mass. 79, 82 (1999) (“Where, as here, the language of the statute is clear, it is the function of the judiciary to apply it, not amend it.”). To assume that §185D was intended to apply to an offer to sell, which is as far as Admit One went with Herman, is to expand the reach of the statute to activity beyond that described in plain language. Alves’s Case, 451 Mass. 171, 176 (2008) (“Where there is such a plain and rational meaning to be applied, we are obliged to apply it, rather than set off on an interpretative quest.”). See also O’Brien v. Massachusetts Bay Transp. Auth., 405 Mass. 439, 443-444 (1989), quoting Commonwealth v. Vickey, 381 Mass. 762, 767 (1980) (“[A] basic tenet of statutory construction is to give the words their plain meaning in light of the aim of the Legislature, and when the statute appears not to provide for an eventuality, there is no justification for judicial legislation.”). We decline to embark upon that expansion.
As Herman has acknowledged in this action, it is the Department of Public Safety (“DPS”) that enforces the subject statute.[7] Indeed, besides this action against Admit *128 One, Herman has filed a claim with the DPS against another licensed ticket seller, Higs Cityside Tickets, Inc. (“Higs”), for offering “Green Monster” tickets to an October, 2006 Orioles game for $825.00.[8] Herman did not buy such a ticket. Following a 2007 evidentiary hearing on Herman’s complaint, the DPS dismissed it because §185D “requires that a resale occur in order to trigger [it].... [Higs’s] mere offer to sell a ticket is not a violation of the statute; the statute clearly provides that there must be a resale.” Although the duty of statutory interpretation falls on courts and not administrative agencies, Taylor v. Housing Appeals Comm., 451 Mass. 149, 154 (2008), “[w]hen questions of law are at issue,” a reviewing court gives “substantial deference to a reasonable interpretation of a statute by [an] agency charged with its administration [and] enforcement.” eVineyard Retail Sales-Mass., Inc. v. Alcoholic Beverages Control Comm'n, 450 Mass. 825, 829 (2008). See also Alves’s Case, supra at 173. Recognizing that this action is obviously not Higs, we note that the DPS interpretation of §185D echoes our own.
We reverse the judgment in favor of Herman, and order judgment to be entered in favor of Admit One.
So ordered.

 ‘Ticket scalping” is simply the reselling of tickets of admission to a public place of amusement. See Opinion of the Justices, 247 Mass. 589, 590 (1924).

 That section provides in pertinent part that:
[n]o licensee under [§ 185A] shall resell any ticket... to any ... public amusement or exhibition of any description at a price in excess of two dollars in advance of the price printed on the face of such ticket... as the purchase price thereof; provided, however, that a price in excess of the above maximum shall not be deemed in violation of this section if the amount in excess of the above maximum is solely attributable to service charges. For the purpose of this section, service charges are defined as costs incurred by said licensee related solely to the procuring and selling of such ticket... and not related to the general business operation of said licensee. Service charges include, but are not limited to, charges for messengers, postage, and long distance telephone calls, extensions of credit and costs attributable thereto.
The imposition of a fee, on an annual or per order basis, for customers purchasing tickets other than by immediate payment therefor in cash, which includes a membership fee, office expenses and the cost of processing credit card orders, shall not be deemed a violation of this section.

 Only one (1%) percent of Admit One’s sales resulted from walk-in purchases; more than ninety (90%) percent of its business was conducted through eBay sales.

 “‘Only persons who have themselves suffered, or who are in danger of suffering’ have standing.” Statewide Towing Ass’n, Inc., supra at 795, quoting Burlington v. Bedford, 417 Mass. 161, 164 (1994). “The complained-of injury must be a direct and ascertainable consequence of the challenged act” Id., quoting Sullivan v. Chief Justice for Admin. & Mgt. of the Trial Court, 448 Mass. 15, 21 (2006). “Speculative injuries are insufficient to confer standing.” Id., citing Ginther v. Commissioner of Ins., 427 Mass. 319, 323 (1998).

 Given our ruling in this case, we refrain from reaching either any issue touching the soundness of the trial judge’s findings beyond his decision concerning standing, or any issue of the comprehensibility of the pricing parameters alluded to in the statute.

 The Sovrensky Court addressed G.L.c. 140, §185A, which requires Department of Public Safety licensing of persons “engage [d] in the business of reselling any ticket.” That section, the Court emphasized, dealt with the “offense” of “engaging in the business ‘of reselling’ tickets;... it is the occupation and not an isolated act which is forbidden;... One may be engaged in the business of selling although he has made no sale.” Id. at 462. See Lather v. Boston, 95 F. Supp. 2d 17, 19 (D. Mass. 2000). Section 185D, on the other hand, governs the actual act of reselling tickets.

 We do not suggest that a claim to DPS constitutes the sole avenue of redress for persons with standing who allege that a ticket reseller has violated the statute.

 Herman has also reportedly filed an action in the Brookline District Court against Ace Tickets, and has made complaints to the DPS against Stub Hub and two individual “street scalpers.”